UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| APPALACHIAN VOICES and THE CANARY COALITION, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| SAMUEL W. BODMAN, in his official capacity as Secretary of the United States Department of Energy; HENRY M. PAULSON, JR., in his official capacity as Secretary of the United States Department of Treasury; VICTOR K. DER, in his official capacity as Deputy Secretary for Clean Coal; and JOSEPH GLOVE, III, in his official capacity as Program Analyst for the Office of Clean Energy Systems, | ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 1:08-cv-00380-RMU |
| Defendants. | ) ) | |

_____

**DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
_____

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Division

RACHEL A. DOUGAN
JASON BRUNO
Trial Attorneys
Environment and Natural Resources Division
United States Department of Justice
Benjamin Franklin Station, P.O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 616-5082
Facsimile: (202) 305-0506
Rachel.Dougan@usdoj.gov

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

DEFENDANTS' MOTION TO DISMISS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

DEFENDANTS' MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    I.     The Tax Credit Programs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    II.    Plaintiffs' Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

LEGAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    I.     Plaintiffs Lack Article III Standing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

          A.     The Environmental Injuries Alleged by Plaintiffs Cannot be Fairly
                 Traced to the Tax Credit Allocations . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

          B.     A Favorable Decision Would Not Redress the Injuries that Plaintiffs
                 Assert . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

          C.     Plaintiffs do not Meet the Injury-in-Fact Requirement for Standing
                 Because Their Asserted Injury is Speculative and not Personal to
                 Them . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    II.    Because DOE has not Taken a Final Agency Action, This Court Lacks
          Jurisdiction Over Claims Against the DOE Defendants . . . . . . . . . . . . . . . . . . 21

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## <u>TABLE OF AUTHORITIES</u>

**FEDERAL CASES**

<u>Abbott Labs v. Gardner,</u>
         387 U.S. 136 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

<u>*Allen v. Wright,</u>
         468 U.S. 737 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10-12, 17

<u>American Soc'y of Travel Agents, Inc. v. Blumenthal,</u>
         566 F.2d 145 (D.C. Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

<u>Ashley Creek Phosphate Co., v. Norton,</u>
         420 F.3d 934 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

<u>Bennett v. Spear,</u>
         520 U.S. 154 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

<u>Cal. Forestry Ass'n v. Thomas,</u>
         936 F. Supp. 13 (D.D.C. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 17

<u>Citizens Against Rails-to-Trails v. Surface Transp. Bd.,</u>
         267 F.3d 1144 (D.C. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

<u>City of Olmsted Falls v. FAA,</u>
         292 F.3d 261 (D.C. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

<u>Cmty. for Creaitive Non-Violence v. Pierce,</u>
         814 F.2d 663 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12

<u>Coalition for Underground Expansion v. Mineta,</u>
         333 F.3d 193 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

<u>Commodity Futures Trading Comm'n v. Nahas,</u>
         738 F.2d 487 (D.C. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

<u>Dalton v. Specter,</u>
         511 U.S. 462 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

<u>Dellums v. U.S. Nuclear Regulatory Comm'n,</u>
         863 F.2d 968 (D.C. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Dep't of Transp. v. Pub. Citizen,
     541 U.S. 752 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 14

Domestic Secs. v. SEC,
     333 F.3d 239 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Fla. Audubon Soc'y v. Bentsen,
     94 F.3d 658 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9-11, 13, 16-19

Franklin v. Massachusetts,
     505 U.S. 788 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

Freedom Republicans, Inc. v. Fed. Election Comm'n,
     13 F.3d 412 (D.C. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 19

Fulani v. Brady,
     935 F.2d 1324 (D.C. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Grand Lodge of Fraternal Order of Police v. Ashcroft,
     185 F. Supp. 2d 9 (D. D.C. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Karst Envtl. Educ. & Prot., Inc. v. EPA,
     403 F. Supp. 2d 74 (D. D.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

Kokkonen v. Guardian Life Ins. Co. of America,
     511 U.S. 375 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Lemon v. Geren,
     514 F.3d 1312 (D.C. Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Lujan v. Defenders of Wildlife,
     504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 13, 16, 19

Lujan v. Nat'l Wildlife Fed'n,
     497 U.S. 871 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Macharia v. United States,
     334 F.3d 61 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Marsh v. Or. Natural Res. Council,
     490 U.S. 360 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

McNutt v. Gen. Motors Acceptance Corp.,
     298 U.S. 178 (1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Nat'l Ass'n of Home Builders v. U.S. Army Corps. of Eng'rs,
    539 F. Supp. 2d 331 (D.C. Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Pub. Citizen v. Office of U.S. Trade Reps.,
    970 F.2d 916 (D.C. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Rasul v. Bush,
    542 U.S. 466 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Renne v. Geary,
    501 U.S. 312 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Simon v. Eastern Ky. Welfare Rights Org.,
    426 U.S. 26 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11, 12

St. John's United Church of Christ v. FAA,
    No. 06-1386, __F.3d__, 2008 WL 746526, (D.C. Cir. March 21, 2008) . . . . . . . . 14, 15

Thomson v. Gaskill,
    315 U.S. 442 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Tulare County v. Bush,
    306 F.3d 1138 (D.C. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.,
    454 U.S. 464 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.,
    435 U.S. 519 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**FEDERAL STATUTES**

5 U.S.C. §§ 701-06 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

5 U.S.C. § 704 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 18

5 U.S.C. § 706(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

26 U.S.C. § 48A(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

26 U.S.C. § 48A(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

26 U.S.C. § 48A(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

26 U.S.C. § 48A(d)(2)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

26 U.S.C. § 48A(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

26 U.S.C. §§ 48A - 48B . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 13

26 U.S.C. § 48B(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

26 U.S.C. § 48B(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 23

42 U.S.C. § 4332(2)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

49 U.S.C. § 46110(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**FEDERAL REGULATION**

40 C.F.R. § 1502.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**DEFENDANTS' MOTION TO DISMISS**

Defendants hereby move this Court to dismiss Plaintiffs' Complaint (Docket No. 1) pursuant to Federal Rule of Civil Procedure 12(b)(1).  As explained fully in Defendants' Memorandum in Support of Defendants' Motion to Dismiss, this Court does not have subject matter jurisdiction because Plaintiffs lack Article III standing to bring their National Environmental Policy Act claim.  In addition, Plaintiffs have not challenged a final agency action with respect to the Department of Energy.  Accordingly, Defendants respectfully request that this Court dismiss Plaintiffs' Complaint in its entirety.

## DEFENDANTS' MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

### Introduction

Plaintiffs' challenge to the government's administration of the Internal Revenue Code

("IRC") with respect to third parties not before the Court should be dismissed because Plaintiffs

lack standing to bring this lawsuit.  Plaintiffs argue that the Department of Treasury and the

Department of Energy violated the National Environmental Policy Act ("NEPA") by failing to

prepare an Environmental Impact Statement ("EIS") before the Internal Revenue Service ("IRS")

allocated tax credits to proposed clean coal projects in accordance with Sections 48A and 48B of

the IRC.  Case law from the Supreme Court and the District of Columbia Circuit make clear that

standing to challenge the IRS' tax treatment of third parties, based on asserted injury flowing

from the actions of those parties, is extremely difficult to establish.  Here, Plaintiffs cannot

demonstrate Article III standing to bring their claims because they have not alleged facts

sufficient to fulfill the three requirements that make up the constitutional minimum for standing.

The causation element of standing is not met because the alleged harms are not fairly

traceable to the allocation of the tax credits, but rather are based on the acts of third parties not

before this Court.  Moreover, the alleged harms would not be redressed through the relief sought

in the complaint – preparation of a NEPA analysis on the allocation of the tax credits.  Finally,

Plaintiffs have not alleged a concrete injury to their particularized interests.  Therefore, as

explained in detail below, this Court lacks subject matter jurisdiction over Plaintiffs' NEPA

challenge to the allocation of tax credits to third parties.

An additional, independent reason exists for this Court to dismiss the case against the

named Department of Energy officials ("the DOE Defendants").  For a Court to have jurisdiction

2

over claims reviewed under the Administrative Procedure Act ("APA"), such as the NEPA claim presented here, the Defendants must have taken a final agency action. Because Plaintiffs have failed to identify any such action by the DOE Defendants, their NEPA claim against the DOE Defendants must be dismissed.

Accordingly, Defendants respectfully request that this Court dismiss Plaintiffs' Complaint in its entirety.[1]/

### **Factual Background[2]/**

## I.     **The Tax Credit Programs**

IRC Sections 48A and 48B provide tax credits for qualifying advanced coal projects and qualifying gasification projects, respectively. See 26 U.S.C. §§ 48A - 48B. For projects using integrated gasification combined cycle ("IGCC") technology and qualifying gasification projects, the credit for a taxable year is 20 percent of the qualified investment. See 26 U.S.C. § 48A(a)(1); id. at § 48B(a). For qualifying advanced coal projects that do not use IGCC, the credit for a taxable year is 15 percent of the qualified investment. See 26 U.S.C. § 48A(a)(2).

Congress authorized $1.3 billion of tax credits for the qualifying advanced coal program and $350 million of tax credits for the qualifying gasification project program. See 26 U.S.C. § 48A(d)(3)(B)(i)-(ii); id. at § 48B(d)(1). In accordance with the statute, the Secretary of Treasury has, in consultation with the Secretary of Energy, established programs for the allocation of tax

---

[1]/     This motion is filed under Federal Rule of Civil Procedure 12(b)(1), in lieu of an answer. Should this Court deny the motion, Defendants will file an answer in accordance with Federal Rule of Civil Procedure 12(a)(4).

[2]/     A more detailed description of the factual background relevant to this motion can be found on pages 2 through 7 of  Defendants' response to Plaintiffs' motion for a preliminary injunction (Docket No. 6).

credits.  See generally IRS Not 2006-24; IRS Not 2006-25.  Under these programs, the tax

credits will be awarded to qualified projects through annual allocation rounds, until the

aggregate credits are fully allocated.  See, e.g., IRS Not 2006-24 at §§ 4.01, 4.02(5).

On November 30, 2006, Defendants announced that nine projects had been accepted in

the first allocation round and $1 billion of tax credits had been allocated to those projects.  See

Docket No. 1, Compl. at ¶ 33.[3]/  Defendants' announcement stated that the nine projects are

proposed to be located in various locations throughout the United States. Id. at ¶ 35.  The

relevant taxpayers will need to meet various requirements in order to claim the credit that has

been allocated to these projects.  See generally IRS Not 2006-24; IRS Not 2006-25; see also

Docket No. 6 at 6-7 (describing requirements of tax credit programs).

## II.    Plaintiffs' Complaint

Plaintiffs filed a complaint in March 2008.  Docket No. 1, Compl.  The complaint

identifies the nine projects for which the IRS allocated tax credits during the initial allocation

round.  See Compl. at ¶¶ 1, 35.  Plaintiffs argue that Defendants violated NEPA by failing to

prepare an EIS before allocating tax credits to these nine projects.  Id.  Plaintiffs assert that they

are injured by Defendants' alleged failure to comply with NEPA.  Id. at ¶¶ 12, 19.

The complaint states that Plaintiffs – Appalachian Voices and The Canary Coalition – are

organizations based in North Carolina.  See Pls.' Compl. at ¶¶ 4, 14.  Plaintiffs assert they have

members that "use and enjoy" areas "surrounding, and downwind of, Duke Energy's proposed

---

[3]/    See also DOE, Press Release dated November 30, 2006, and Fact Sheet, available at
http://www.doe.gov/news/4495.htm (last visited May 21, 2008); IRS, Press Release dated
November 30, 2006, available at http://www.irs.gov/newsroom/article/0,,id=164595,00.html
(last visited May 21, 2008) (previously filed as Docket No. 6, Ex. 3)

Cliffside power plant in Rutherford and Cleveland counties in North Carolina." Id. at ¶¶ 5-8, 16-18. The Cliffside unit is one of the nine projects that was allocated tax credit during the initial allocation round. Id. at ¶ 35. Plaintiffs do not assert they have any members that use or enjoy any of the areas where the other eight projects allocated tax credits were proposed. See generally id. Plaintiff Appalachian Voices also asserts it has members that "use and enjoy" the "coalfield regions of the central and southern Appalachian Mountains." Id. at ¶¶ 9-11. Plaintiffs assert that "[a]t least one of the tax credit recipients, Duke Energy in North Carolina, currently obtains coal . . . [from] the Appalachian Mountains and Duke plans to continue using such coal to fuel its new power plant." Id. at ¶ 37.

Plaintiffs' complaint asserts that coal-fueled power plants, including those receiving tax credits, are major sources of air pollution and are the "principle [sic] force driving the market for, and environmental degradation resulting from, mining, processing, transporting, burning and disposing coal." Id. at ¶¶ 38-39.

The injunctive relief sought by Plaintiffs is an order "to revoke or suspend the tax credits until [Defendants] fully comply with NEPA and the APA" and to "[e]njoin Defendants from approving the remainder of the tax credits under the Energy Policy Act of 2005 until Defendants comply with NEPA and the APA." Id. at Prayer for Relief at ¶¶ 2, 3.

## Legal Background

NEPA requires agencies to prepare an EIS for "every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C); see 40 C.F.R. § 1502.3. The two main goals of the EIS requirement are to inject environmental considerations into the federal agency's

decision-making process and to inform the public that the federal agency has considered

environmental concerns.  See Dep't of Transp. v. Pub. Citizen, 541 U.S. 752, 768 (2004);

Citizens Against Rails-to-Trails v. Surface Transp. Bd., 267 F.3d 1144, 1151 (D.C. Cir. 2001).

NEPA is a procedural statute; it does not mandate a particular substantive result.  Vt. Yankee

Nuclear Power Corp. v. Natural Res. Def. Council, Inc., 435 U.S. 519, 558 (1978); Marsh v. Or.

Natural Res. Council, 490 U.S. 360, 371 (1989).

Because NEPA does not provide a private right of action, judicial review of a NEPA

claim is governed by the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-06.  Lujan v.

Nat'l Wildlife Fed'n, 497 U.S. 871, 882 (1990); Tulare County v. Bush, 306 F.3d 1138, 1143

(D.C. Cir. 2002).  The APA limits judicial review to "final agency action."  5 U.S.C. § 704.  In

addition, the APA imposes a narrow and highly deferential standard of review limited to a

determination of whether the federal agencies acted in a manner that was arbitrary, capricious, an

abuse of discretion or contrary to law.  5 U.S.C. § 706(2)(A); Marsh, 490 U.S. at 378.

### Standard of Review

As courts of limited jurisdiction, federal courts may only decide cases after the party

asserting jurisdiction demonstrates that the dispute falls within the court's Constitutional and

statutory jurisdiction.  Rasul v. Bush, 542 U.S. 466, 489 (2004) (federal courts "possess only that

power authorized by Constitution and statute") (quoting Kokkonen v. Guardian Life Ins. Co. of

America, 511 U.S. 375, 377 (1994)).  Federal Rule of Civil Procedure 12(b)(1) provides for

dismissal of a claim if the court "lacks jurisdiction over the subject matter" of a claim.  Once

challenged, the burden of establishing a federal court's subject matter jurisdiction by a

preponderance of the evidence rests on the party asserting jurisdiction.  Thomson v. Gaskill, 315

6

U.S. 442, 446 (1942); <u>McNutt v. Gen. Motors Acceptance Corp.</u>, 298 U.S. 178, 189 (1936);

<u>Commodity Futures Trading Comm'n v. Nahas</u>, 738 F.2d 487, 492 n. 9 (D.C. Cir. 1984).  The

Supreme Court presumes that federal courts lack jurisdiction unless the contrary appears

affirmatively from the record.  <u>Renne v. Geary</u>, 501 U.S. 312, 316 (1991) (citation omitted).

Because subject matter jurisdiction focuses on the court's power to hear the claim, "the court

must give the Plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1)

motion than would be required for a Rule 12(b)(6) motion for failure to state a claim."  <u>Nat'l</u>

<u>Ass'n of Home Builders v. U.S. Army Corps. of Eng'rs</u>, 539 F. Supp. 2d 331, 337 (D.C. Cir.

2008) (citing <u>Macharia v. United States</u>, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); <u>Grand Lodge of</u>

<u>Fraternal Order of Police v. Ashcroft</u>, 185 F. Supp. 2d 9, 13 (D. D.C. 2001)).

<u>**Argument**</u>

**I.      Plaintiffs lack Article III standing.**

As the party invoking federal jurisdiction, Plaintiffs bear the burden of demonstrating

that the standing requirements have been satisfied.  <u>Lujan v. Defenders of Wildlife</u>, 504 U.S.

555, 561 (1992).  "[A] showing of standing 'is an essential and unchanging' predicate to any

exercise of . . . jurisdiction."  <u>Fla. Audubon Soc'y v. Bentsen</u>, 94 F.3d 658, 663 (D.C. Cir. 1996)

(en banc) (citing <u>Lujan</u>, 504 U.S. at 560).  In order to satisfy the "irreducible constitutional

minimum of standing," Plaintiffs must have suffered an injury that is "concrete and

particularized, and actual or imminent," that is fairly traceable to the challenged action, and that

is likely to be redressed by a favorable decision.  <u>Fla. Audubon Soc'y</u>, 94 F.3d at 663; <u>Lujan</u>,

504 U.S. at 560-62.

There are "special problems attendant upon the establishment of standing" in cases where

the plaintiffs seek to attack the IRS' treatment of a third party under the tax code.  Fulani v. Brady, 935 F.2d 1324, 1327 (D.C. Cir. 1991), cert denied, 502 U.S. 1048 (1992) (plaintiffs challenging tax-exempt status of Commission for Presidential Debates lacked standing because their ability to participate in debates depended on the actions of third parties not before the court); see also American Soc'y of Travel Agents, Inc. v. Blumenthal, 566 F.2d 145, 149-150 (D.C. Cir. 1977), cert. denied, 435 U.S. 947 (1978) (travel agents did not have standing to challenge tax exemption for religious organizations that competed for tour business, where it was speculative whether denial of the exemption would in fact cause plaintiffs' business to improve). In cases challenging actions by the IRS under the tax code as they pertain to third parties, plaintiffs' standing typically founders on the requirement to show causation and redressability because the alleged injury in such cases does not flow directly from the tax decision but from the independent actions of third parties.  See, e.g., Allen v. Wright, 468 U.S. 737 (1984) (discussed infra at pages 10 and 11); Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26 (1976) (discussed infra at n.5).  Here, in addition to being unable to meet the causation and redressability requirements, Plaintiffs have also failed to show any concrete injury personal to them.

Because Plaintiffs' complaint does not allege facts sufficient to meet any of the three standing requirements, this Court should grant Defendants' motion to dismiss.

**A.     The environmental injuries alleged by Plaintiffs cannot be fairly traced to the tax credit allocations.**

Plaintiffs do not have standing because they have not asserted any particularized injury that is "fairly traceable" to the IRS' allocations of tax credit.  Lujan, 504 U.S. at 561. Courts have a "duty to scrutinize closely" the relationship between the challenged government activity and the alleged harm at issue.  Freedom Republicans, Inc. v. Fed. Election Comm'n, 13 F.3d

412, 417 (D.C. Cir. 1994). "[U]nless there is a <u>substantial probability</u> that the substantive agency action . . . created a demonstrable risk, or caused a demonstrable increase in an existing risk, of injury to the particularized interests of the plaintiff, the plaintiff lacks standing." <u>Fla. Audubon Soc'y</u>, 94 F.3d at 669 (internal citation omitted) (emphasis added).

Plaintiffs cannot show it is sufficiently probable that Plaintiffs' alleged injury – general environmental harms from the not-yet-operational projects, <u>e.g.</u> Compl. at ¶¶ 38-40 – are causally linked to the allocations of tax credit. Where a chain of causation rests on the acts of a third party, like the power plant companies here, the plaintiff "must show that the agency's action is more than only one of the many factors whose relative influence may affect the third parties' behavior." <u>Cmty. for Creative Non-Violence v. Pierce</u>, 814 F.2d 663, 669 (D.C. Cir. 1987). Indeed, "[t]he facts alleged must show that the agency action is at least a <u>substantial factor</u> motivating the third parties' actions against appellants." <u>Id.</u> (emphasis added); <u>see also Dellums v. U.S. Nuclear Regulatory Comm'n</u>, 863 F.2d 968, 980 (D.C. Cir. 1988) ("[C]omplainant has the burden of showing that but for the particular governmental action that he is challenging, the injury would abate."). Here, given the variety of independent variables that influence the decision to build a power plant, Plaintiffs cannot meet their burden of demonstrating that the tax credit was a "substantial factor" in motivating Duke Energy to construct the Cliffside unit, a necessary link in their causal chain. Nor can Plaintiffs show the credit is a substantial factor as to the remaining eight projects. In fact, the tax credit was clearly not a determining factor for Tampa Electric; after being allocated the tax credit, the company

announced it had decided not to proceed with its project.[4]/  As a result, Plaintiffs can not show a "substantial probability" that the tax credit allocation will cause their asserted injuries.

The D.C. Circuit's en banc decision in <u>Florida Audubon Society</u> is instructive.  94 F.3d 658.  In <u>Florida Audubon Society</u>, environmental organizations argued that Treasury and the IRS should have prepared an EIS before authorizing a tax credit for the use of a particular alternative fuel additive known as ethyl tertiary butyl ether ("ETBE").  <u>Id.</u> at 662.  The organizations argued that the ETBE tax credit would encourage farmers to increase production of the corn and sugar necessary to produce ethanol, which in turn would increase agricultural pollution and harm wildlife areas that the organizations' members used and enjoyed.  <u>Id.</u> at 669-70.  The D.C. Circuit held this chain of causation was speculative and, because it rested on the independent acts of third parties, was uncertain.  <u>Id.</u> at 670 (noting that a chain that rests on the independent acts of even one group can eliminate the possibility of proving causation).  A similar finding is warranted here.

Indeed, the Supreme Court has rejected standing claims in analogous situations.  In <u>Allen v. Wright</u>, for example, parents of black children attending desegregated schools challenged the IRS' grant of tax exemptions to racially discriminatory private schools, arguing the exemptions allowed more racially discriminatory private schools to exist and permitted more white children

---

[4]/        <u>See</u> Tampa Electric, Press Release dated October 4, 2007, <u>at</u> http://www.tampaelectric.com/news/article/index.cfm?article=430 (last visited May 21, 2008) (previously filed as Docket No. 6, Ex. 5).  There is also evidence that Duke Energy's plans to construct the Cliffside project predate, and thus were not caused by, the allocation of tax credit. <u>See</u> Docket No. 6, Ex. 7 at 3 (stating that, in May 2005, Duke Energy filed with the N.C. Utilities Commission information related to its plans to construct the Cliffside project).  Moreover, the fact that the tax credit constitutes only a small percentage of the projected project costs, <u>see</u> <u>infra</u> at n.6, suggests it is unlikely to be a substantial factor in a company's decision about whether or not to proceed with the project.

to attend those schools rather than the desegregated public schools.  468 U.S. 737 (1984).  The Supreme Court concluded the "links in the chain of causation between the challenged Government conduct and the asserted injury are far too weak for the chain as a whole to sustain respondents' standing."  Id. at 759.  The Court found it to be "entirely speculative" whether the withdrawal of tax exemption would lead any particular school to change its policy or cause any particular parent to transfer his/her child to another school.[5]/  Id. at 758.  Similarly, here, it is entirely speculative whether any particular company will change its plans to construct a clean coal unit based on the availability of the tax credit.  Notably, Congressional predictions that a tax credit will promote a particular outcome cannot be relied on to demonstrate the causal chain necessary for standing.  Fla. Audubon Soc'y, 94 F.3d at 670-71.  Moreover, the amount of the one-time tax credit will be a small percentage of the overall costs of constructing and operating an advanced coal technology unit and therefore cannot be seen as a cause of the environmental impacts from the project.[6]/  Plaintiffs' chain of causation is thus insufficient to satisfy the constitutional requirements for standing.

---

[5]/    The Supreme Court's decision in Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26 (1976), is also instructive.  There, the Court held that indigents lacked standing to challenge an IRS revenue ruling that reduced the amount of free medical care hospitals must provide in order to retain tax status as a charitable institutions.  The Court found it "purely speculative whether the denials of service specified in the complaint fairly can be traced to [the IRS'] 'encouragement' or instead result from decisions made by the hospitals without regard to the tax implications."  Id. at 43.

[6]/    The precise percentage for each project is unknown as many factors may affect the ultimate cost of construction for each project as well as the amount of credit, if any, that the taxpayers decide to claim for each project.  The percentages, however, are likely to be small. For example, based on the company's recent estimates, the amount of the tax credit that Duke Energy plans to claim for the Cliffside project ($125 million, see Docket No. 9 Ex. 1) is slightly less than 7%  of the project's estimated capital costs ($1800 million, see Docket No. 6, Ex. 6).

Notably, indirect environmental harms, if any, arising from the incentives created by the tax code could nearly always be asserted in the manner used by Plaintiffs here. For example, litigants could argue that particular tax incentives, by encouraging economic development, contribute to environmental problems. If such assertions were sufficient to establish causation, virtually any tax program that might promote or inhibit economic activity in some fashion could be subject to a NEPA challenge by persons who have no direct stake in the tax liability. This threatens to create a whole new category of challenges to administration of the tax code, and place corresponding burdens on Treasury and the courts. In addition, allowing standing for such claims would be contrary to the Supreme Court and D.C. Circuit precedent that requires a showing that the challenged action has had a concrete impact on the plaintiffs' personal interests. See infra at Argument Section I.C.

Because Plaintiffs cannot show the alleged injury is fairly traceable to the allocation of tax credits, Plaintiffs can not establish standing.

**B.      A favorable decision would not redress the injuries that Plaintiffs assert.**

Plaintiffs also fail to demonstrate Article III standing "because they are unable to show that their injury will be redressed by a favorable decision." Cal. Forestry Ass'n v. Thomas, 936 F. Supp. 13, 18 (D.D.C. 1996); Allen, 468 U.S. at 751 (explaining that "relief from the injury must be 'likely' to follow from a favorable decision") (citing Simon, 426 U.S. at 38, 41). Here, it is "entirely speculative whether the injunction Plaintiffs seek would either prevent or remedy their alleged injuries." Cal. Forestry, 936 F. Supp. at 18; see Cmty. for Creative Non-Violence, 814 F.2d at 669-70.

In cases where the plaintiffs allege a procedural violation, such as a NEPA claim, the

redressability element can generally be satisfied where the Court may order the agency to undertake the procedure. See, e.g., Lemon v. Geren, 514 F.3d 1312, 1315 (D.C. Cir. 2008); see also Fla. Audubon Soc'y, 94 F.3d at 668 ("a procedural right may permit a litigant to assert that right 'without meeting all the normal standards for redressability and immediacy'") (citing Lujan, 504 U.S. at 572 n.7). In NEPA cases, the courts have recognized that there may be some uncertainty as to whether or how the agency will change its behavior as a result of preparing an EIS, but have not required plaintiffs to show that preparation of an EIS would "force" the agency to change their action in any particular way. Lemon, 514 F.3d at 1315. As the D.C. Circuit explained, "[t]he idea behind NEPA is that if the agency's eyes are open to the environmental consequences of its actions and if it considers options that entail less environmental damage, it may be persuaded to alter what it proposed." Id. (citation omitted) (emphasis added). This case, however, is not a typical NEPA case where the agency "may" be persuaded by the information contained in a NEPA document.

Unlike the agency defendants in most NEPA cases, which have the option of reaching a different decision following the preparation of an EIS, Defendants here cannot be "persuaded to alter what [is] proposed" because they have no discretion to do so. Through the Energy Policy Act of 2005 ("EPAct"), Congress has mandated which taxpayers will qualify for tax credits by establishing specific, technical requirements for the tax credit programs. See Pub. L. 109-58 at § 1307, 119 Stat. 594 at 999-1006 (August 8, 2005) (codified at 26 U.S.C. §§ 48A -48B). The IRS must allocate the tax credits pursuant to Congress' mandate. If taxpayers submit applications that meet the statutory criteria for the tax credits, the IRS does not have discretion to withhold allocation of the tax credits. See, e.g., 26 U.S.C. § 48A(d)(2)(C) (the Secretary "shall issue a

determination as to whether an applicant has met the requirements under subsection (e)(1) within 60 days"). Therefore, unlike the NEPA case where preparation of an EIS may sway the agency to modify or withdraw its proposed action, Defendants here simply cannot decide that IRS will not allocate tax credits or that it will allocate tax credits based on different criteria.

As the Supreme Court has stated, it would not "satisfy NEPA's 'rule of reason' to require an agency to prepare a full EIS due to the environmental impact of an action it could not refuse to perform." Dep't of Transp. v. Pub. Citizen, 541 U.S. 752, 769 (2004) (holding that EIS was not required under NEPA to consider effects that "an agency has no ability to prevent . . . due to its limited statutory authority over the relevant actions"). The NEPA analysis that Plaintiffs seek would not change the outcome of the tax credit allocations because the IRS must base its allocations on the statutory requirements, and not on a NEPA document. As such, Plaintiffs cannot meet the redressability prong of standing.

Moreover, the complete lack of causation (discussed earlier) between the agency action and the purported underlying harm also leads to the conclusion that the Plaintiffs cannot meet the redressability prong. Even if Defendants had authority to withdraw the tax credit as a result of a NEPA analysis, which they decidedly cannot, Plaintiffs' asserted injury would still not be redressed by the relief sought because there is no way to know whether or how the third party power plant companies would respond. As the D.C. Circuit recently explained, while plaintiffs who assert a procedural right typically are not required to meet the normal standards for redressabilty, "that rule applies only when a party challenging an agency's procedural failure cannot 'establish with any certainty' that the *agency* would reach a different decision." St. John's United Church of Christ v. FAA, No. 06-1386, __F.3d__, 2008 WL 746526, at *3 (D.C.

14

Cir. March 21, 2008) (previously filed as Docket No. 6, Ex. 8).[7]/  However, where the

"redressability obstacle" is uncertainty over what a third party would do, plaintiffs "must satisfy

the normal standard for redressability."  Id.  Here, even if this Court were to order an EIS,

regardless of whether or how the agency altered its allocation of tax credits, the third party

power plant companies' behavior would not necessarily be altered and thus Plaintiffs' asserted

underlying injuries – environmental harms from the projects – may or may not occur and thus

cannot be redressed.[8]/  As described in Argument Section I.A., supra, Plaintiffs cannot show any

causal link between the agency action to approve the tax credit and the third party power plant

companies' decisions to pursue the projects.  At bottom, no matter how the problem with

Plaintiffs' standing is characterized – as a redressability obstacle or as an attenuated link in the

chain of causation, the fact that Plaintiffs' asserted injury is based on the independent actions of

---

[7]/     Although it was not a NEPA case, the St. John's case is relevant here.  In St. John's, the
petitioners challenged the Federal Aviation Administration's grant of money to reimburse the
City of Chicago for costs related to expansion of O'Hare International Airport under the
Religious Freedom Restoration Act and 49 U.S.C. § 46110(a).  See generally id. The D.C.
Circuit held that petitioners lacked standing because they had not shown that the "grant has
caused their injuries, or that the court can redress those injuries."  Id. at *3.  The Court reasoned
that even if it vacated the grant, the petitioners had not met their burden of proving that Chicago
"would scrap the O'Hare project."  Id.  The petitioners argued that they were not required to
meet such a "high probability" of redressability because they were asserting a "procedural right."
Id.  The Court rejected this argument explaining that while a party asserting a procedural right
need not show that the agency would reach a different decision as a result of the procedure
requested, where the asserted injury is caused by a third party and there is uncertainty over what
that third party would do if the procedure was ordered, the normal redressability standards apply.
Id.

[8]/     In a typical NEPA case, plaintiffs generally argue that the challenged agency action, for
example an agency proposal to approve highway construction or a timber sale, has resulted in
environmental harms.  Because, as explained above, the agency may alter or even withdraw its
proposed action as a result of a NEPA analyses, the courts will generally find the redressability
element is satisfied.  Here, however, the environmental harms asserted by Plaintiffs are not a
result of the agency action but rather the actions of third party power plant companies.

third parties and not the challenged agency action means Plaintiffs' standing must fail.

Because Plaintiffs lack Article III standing, this Court lacks jurisdiction to hear Plaintiffs' claims.  Accordingly, this Court should dismiss Plaintiffs' lawsuit.

**C.     Plaintiffs do not meet the  injury-in-fact requirement for standing because their asserted injury is speculative and not personal to them.**

Plaintiffs also cannot meet the standing requirement that their injury be both "concrete and particularized" and "actual or imminent."  Lujan, 504 U.S. at 560.  Plaintiffs have not asserted sufficient facts to demonstrate an injury to their particularized interests from the tax credit allocations.

Plaintiffs' complaint makes no assertions related to harm resulting from the tax credit allocations.  See generally Compl.  Instead, Plaintiffs make general assertions that "[c]oal-fired power plants, including those receiving tax credits pursuant to the Energy Policy Act of 2005" are the cause of various environmental impacts.  Id. at ¶¶ 38-40.  Plaintiffs' asserted injury is insufficient to demonstrate standing to challenge the tax credit allocation for any of the nine projects.  For eight of the nine projects, Plaintiffs cannot demonstrate a concrete injury to their particularized interests from the projects because they have not asserted any facts to show they have any geographic connection to the relevant project areas.  For the ninth project, Duke Energy's Cliffside project, although Plaintiffs do assert facts to show they use and enjoy areas near the proposed project, Compl. at ¶¶ 5-8, 16-18, their claim of injury still fails because they have not asserted facts to show a "demonstrably increased risk of serious environmental harm" that "actually threatens the plaintiff's particular interests."  Fla. Audubon Soc'y, 94 F.3d 658 at 667.

To have standing to bring their NEPA claim, Plaintiffs must allege injury that is "distinct

16

and palpable, and not abstract or conjectural or hypothetical." Allen, 468 U.S. at 751 (internal citations and quotation marks omitted). Procedural violations alone are insufficient to grant Plaintiffs' standing. See Cal. Forestry, 936 F. Supp. at 19-20 (citing Fla. Audubon Soc'y, 94 F.3d at 664). Plaintiffs must show "a particularized injury–an increased risk to a personal interest." Fla. Audubon Soc'y, 94 F.3d at 666; see also Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 473 (1982) (citation omitted) (to establish standing,"party seeking review must allege facts showing that he is himself adversely affected"). In addition, the particularized injury must be "at least imminent in order to reduce the possibility that a court might unconstitutionally render an advisory opinion 'by deciding a case in which no injury would have occurred at all.'" Fla. Audubon Soc'y, 94 F.3d at 663 (citation omitted).

Plaintiffs have not alleged any geographical nexus to eight of the nine projects and thus cannot claim a particularized injury to their personal interests from those projects. For claims brought under NEPA, in order to demonstrate a concrete interest sufficient for standing, there must be a "geographic nexus between the individual asserting the claim and the location suffering an environmental impact." Ashley Creek Phosphate Co., v. Norton, 420 F.3d 934, 938 (9th Cir. 2005) (finding no standing where company "lack[ed] any judicially recognizable geographic nexus to the area that would be affected by mining [project] . . . . approximately 250 miles away"). The nine projects are proposed to be located in various locations throughout the United States, including Edwardsport, Indiana; Polk County, Florida; Kemper County, Mississippi; Rutherford and Cleveland Counties, North Carolina; Bedford, Kentucky; Carson, California; and Longview Texas. Compl. at ¶ 35. Although Plaintiffs assert they use and enjoy

areas in Rutherford and Cleveland Counties, North Carolina, where Duke Energy's Cliffside project is proposed to be located, see id. at ¶¶ 6-11, 16-18, Plaintiffs do not assert they have any connection to the areas where the other projects are proposed.  See generally Compl.  Not only do they have no geographic connection to the projects, Plaintiffs fail to assert any concrete interests that could even potentially be injured from the projects.  See generally id.  As such, they cannot demonstrate any "particularized and personal" interest that has been or will be injured as a result of these projects, much less from the IRS' allocation of tax credit to those projects.  See Fla. Audubon Soc'y, 94 F.3d at 667-68 & n.4.  Plaintiffs' general concerns about coal-fired power plants, Compl. at ¶¶ 38-40, are "too general for court action, and suited instead for political redress."[9]/  Id. at 667 n.4.  Accordingly, at a minimum, this Court should find that Plaintiffs have failed to claim injury sufficient to challenge the allocation of tax credits to the eight projects located outside of North Carolina.[10]/

Although Plaintiffs' complaint asserts that they have members that use and enjoy areas in geographic proximity to the proposed Cliffside project, see Pls.' Compl. at ¶¶ 6-11, 16-18, these

_____

[9]/    The fact that Plaintiffs apparently seek to challenge any and all tax credit allocations authorized by the EPAct legislation regardless of where the proposed project will be located indicates that Plaintiffs' lawsuit is, at bottom, a challenge to Congress' legislation and not any particular agency action.  Plaintiffs clearly disagree with Congress' determination that advanced coal and gasification projects that meet the criteria set forth in the EPAct legislation should receive tax credits.  Plaintiffs, however, cannot bring a NEPA claim against an act of Congress.  The APA provides for judicial review only of "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court . . . ."  5 U.S.C. § 704.  Under the plain language of the APA, Congress is not an "agency."  Id. at § 701(b)(1) (defining "agency" to include "each authority of the Government of the United States, whether or not it is within or subject to review by another agency, but does not include-(A) the Congress . . .") (emphasis added).

[10]/    One of the projects – the Tampa Electric facility in Polk County, Florida – is no longer moving forward at all, and therefore cannot be a basis for standing.  See supra at n.4.

assertions are also insufficient to demonstrate an injury-in-fact.  "[G]eographic proximity does not, in and of itself, confer standing on any entity under NEPA or any other statute.  Rather, it is the concrete and particularized injury which has occurred or is imminent due to geographic proximity to the action challenged that gives rise to Article III standing."  City of Olmsted Falls v. FAA, 292 F.3d 261, 267 (D.C. Cir. 2002).  Here, Plaintiffs' general and speculative allegations of harm from coal-fueled power plants, Compl. at ¶¶ 38-40, are insufficient to demonstrate injury-in-fact.

A plaintiff alleging a NEPA violation must show a "demonstrably increased risk of serious environmental harm" that "actually threatens the plaintiff's particular interests."  Fla. Audubon Soc'y, 94 F.3d 658 at 667; see also Freedom Republicans, 13 F.3d at 416 ("In order to make out constitutionally cognizable injury, plaintiffs must demonstrate that the allegedly deficient procedures implicate distinct substantive interests as to which Article III standing requirements are independently satisfied.") (internal citations omitted); Lujan, 504 U.S. at 573 n. 8 (plaintiff can assert a procedural injury only where "the procedures in question are designed to protect some threatened concrete interest of his that is the ultimate basis of his standing").  Because Plaintiffs have not asserted facts to show particularized injury to their interests as a result of any of the tax credit allocations, they do not have standing to bring this lawsuit.

The environmental harm alleged by Plaintiffs from the operation of the Cliffside project is conjectural.  According to statements by Duke Energy, the Cliffside project is not expected to be in service until the summer 2012.  See N.C. Utilities Comm'n Docket No. E-7, Sub 790, Duke Energy Carolinas' Advanced Clean Coal Cliffside Unit 6 Cost Estimate Report dated Feb. 29, 2008 at page 2, available at http://www.duke-energy.com/pdfs/022908-e7-sub-7-90.pdf (last

visited May 21, 2008) (previously filed as Docket No. 6, Ex. 6).  In fact, it is far from certain that

the proposed project will ever become operational.  A variety of different factors may lead a

company to decide not to proceed with its project.[11]/  See, e.g., Docket No. 6 Ex. 5 (press release

announcing that Tampa Electric, another 2006 tax credit recipient, will not proceed with

proposed project as a result of "continued uncertainty" related to carbon dioxide regulations and

the potential for related project cost increases).

Moreover, Plaintiffs have not asserted facts to show that if the Cliffside project did move

forward, it would cause a "significantly increased risk" to their particular interests.  The Cliffside

project area is already home to many, older coal-fired power plants.  As part of the Cliffside

project, Duke Energy will retire four older units – Cliffside Units 1 through 4.  See N.C. Utilities

Comm'n , Order Granting Certificate of Public Convenience & Necessity with Conditions at 34

(March 21, 2007), at http://www.duke-energy.com/pdfs/NCUC-Cliffside-Order.pdf?sec=content

(last visited May 21, 2008) (previously filed as Docket No. 6 Ex. 7).  In addition to retiring these

four units, Duke Energy has committed to retire older coal-fired units on a megawatt-for-

megawatt basis, thus potentially reducing emissions after completion of the Cliffside project.[12]/

---

[11]/      In addition, even if the project goes forward, the company may or may not ultimately
claim the tax credit for the project.  A taxpayer that does not place its project into service within
the prescribed period of time, will forfeit the tax credit.  See generally IRS Not 2006-24 at App.
A; IRS Not 2006-25 at App. A (closing agreements including terms related to forfeiture and
reduction of credit).  In addition, advanced coal projects that do not receive certification, which
requires the taxpayer to receive all environmental approvals necessary to begin construction, will
also forfeit the tax credit.  IRS Not 2006-24 at App. A; see also IRS Not 2006-24 at § 4.02(11);
IRS Not 2006-25 at § 4.02(11) (explaining that if closing agreement requirements are not
followed, a project's credit may be forfeited or subject to recapture).

[12]/      The proposed Cliffside unit is also designed to use advanced coal-based generation
technology and, to be qualified for the tax credit, must be designed to meet particular
performance requirements, including reduced levels of emissions.  See 26 U.S.C. § 48A(f).  The

Id.  At bottom, Plaintiffs have failed to assert facts sufficient to show, as they must, that there is an increased risk of injury to their particular interests.  As such, they cannot satisfy the standing requirement of injury-in-fact.

Accordingly, this Court should dismiss Plaintiffs' complaint for lack of standing.

**II.    Because DOE has not taken a final agency action, this Court lacks jurisdiction over claims against the DOE Defendants.**

This Court also does not have jurisdiction over Plaintiffs' NEPA claim against the DOE Defendants because the DOE Defendants did not take any final agency action, which is a prerequisite for judicial review under the APA.

Because the APA limits judicial review to "final agency action," a plaintiff does not have standing to bring a NEPA claim against an agency where the agency has not taken a final agency action.  See Coalition for Underground Expansion v. Mineta, 333 F.3d 193, 196 (D.C. Cir. 2003) (citing 5 U.S.C. § 704) (finding no standing to bring NEPA claim because plaintiffs' asserted injuries were not caused by any final federal agency action); Karst Envtl. Educ. & Prot., Inc. v. EPA, 403 F. Supp. 2d 74, 80 (D. D.C. 2005) (citation omitted) ("Generally, for a court to have jurisdiction over claims seeking judicial review of an agency action under the APA, it must determine that the action is final").  Importantly, "[i]t is well established that the 'refusal to prepare an [Environmental Impact Statement] is not itself a final agency action for purposes of APA review.'"  Coalition for Underground Expansion, 333 F.3d at 196 n. 6 (citing Pub. Citizen v. Office of U.S. Trade Reps., 970 F.2d 916, 918 (D.C. Cir.1992)).

---

project must also receive all required Federal and State environmental authorizations, id. at 48A(e)(2)(A), which may involve permits related to operating, construction, water, wetlands, and/or air impacts, among others.

In determining "finality" of agency action for judicial review under the APA, federal courts apply a two-part test. "A final agency action (1) marks the consummation of the agency's decision making . . . and (2) the action must be one by which rights or obligations have been determined or from which legal consequences will flow." Karst, 403 F. Supp. 2d at 80 (citing Domestic Secs. v. SEC, 333 F.3d 239, 246 (D.C. Cir. 2003) (internal quotation marks omitted); Bennett v. Spear, 520 U.S. 154, 177-78 (1997). Here, because the actions taken by DOE as part of the tax credit program do not constitute "final agency action" under the APA, this Court lacks jurisdiction over Plaintiffs' claim against the DOE Defendants.

DOE's activities as a consulting agency in administration of the tax credit programs did not "mark the consummation" of a decision-making process nor did they determine any rights or obligations. To determine when an agency action is final, courts have looked to, among other things, "whether its impact 'is sufficiently direct and immediate' and has a 'direct effect on . . . day-to-day business.'" Franklin v. Massachusetts, 505 U.S. 788, 796-97 (1992) (quoting Abbott Labs v. Gardner, 387 U.S. 136, 152 (1967)). Ultimately, "[t]he core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." Id. at 797. In Franklin, the Supreme Court found that a census report to the President from the Secretary of Commerce carried "no direct consequences" for reapportionment of congressional districts because the report served "more like a tentative recommendation than a final and binding determination" and, therefore, did not constitute final agency action. Id. at 798. Similarly, in Dalton v. Specter, 511 U.S. 462, 469 (1994), the Supreme Court held that the report to the President of the Defense Base Closure and Realignment Commission was not final agency action under the APA because it "'carr[ied] no

22

direct consequences' for base closures." (quoting <u>Franklin</u>, 505 U.S. at 798).

Here, DOE's Congressionally-mandated role in the tax credit programs was as a consulting agency to the IRS. <u>See</u> 26 U.S.C. § 48A(d)(1); <u>id.</u> at § 48B(d)(1). DOE reviewed the applications for the tax credits and provided its technical advice to IRS as to which applications met the statutory requirements for the program. <u>See</u> IRS Not 2006-24 at § 4.02(9); IRS Not 2006-25 at § 4.02(8). DOE did not determine which applications would receive an approval letter, but merely provided its expertise in assessing the "technical and financial feasibility of the potential projects against the requirements of EPACT Section 1307." <u>See</u> Rekos Decl. at ¶¶ 9, 13-14 (previously filed as an attachment to Docket No. 6). Nor is DOE a party to or involved in the execution of the closing agreements between the tax credit recipients and the IRS. <u>Id.</u> at ¶ 16. As such, DOE's certification of projects did not have a "direct and immediate" effect because it did not mark the end of the process for determining which projects could claim tax credits. Rather, DOE merely provided assistance to IRS by reviewing applications to determine if the technical requirements of the tax code were satisfied. As such, this determination is not a final agency action subject to a NEPA challenge. Because a final agency action is a prerequisite for judicial review, this Court should dismiss Plaintiffs' claim against the DOE Defendants.

### <u>Conclusion</u>

For the foregoing reasons, Defendants respectfully request that this Court grant Defendants' motion to dismiss and dismiss Plaintiffs' Complaint in its entirety.

Respectfully submitted this 23rd day of May 2008.

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Division

/s/ Rachel A. Dougan
RACHEL A. DOUGAN, DC Bar # 485507
JASON BRUNO, DC Bar # 472290
Environment and Natural Resources Division
United States Department of Justice
Benjamin Franklin Station, P.O. Box 663
Washington, D.C.  20044-0663
Telephone: (202) 616-5082 (Dougan)
Facsimile: (202) 305-0506
Rachel.Dougan@usdoj.gov

Of Counsel:

CHARLES B. RAMSEY
Office of Associate Chief Counsel
Internal Revenue Service
U.S. Department of Treasury
Washington, D.C.
(202) 622-3110

JANET MASTERS
Office of General Counsel
U.S. Department of Energy
Washington, D.C.
(202) 586-3415

NATALIE APPETTA
Office of Chief Counsel
National Energy Technology Laboratory
U.S. Department of Energy
Morgantown, WV
(304) 285-2035

**CERTIFICATE OF SERVICE**

I hereby certify that on May 23, 2008, a copy of the foregoing DEFENDANTS'

MOTION TO DISMISS AND MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION

TO DISMISS and related proposed order, was served by CM/ECF electronic filing on the

following attorneys of record:

Scott A. Gollwitzer
APPALACHIAN VOICES
16 Eagle Street, Suite 200
Asheville, NC 28801
(828) 505-1963
scott@appvoices.org

Stephen Holmes Novak
WILDLAW
46 Haywood Street
Suite 323
Asheville, NC 28801
(828) 252-9223
wildlawNC@aol.com

In addition, pursuant to this Court's Standing Order For Civil Cases at Section 3(a), a

courtesy copy will be served on the Court via courier on May 27, 2008.

/s/ Rachel A. Dougan

Counsel for Defendants

25

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

APPALACHIAN VOICES and          )
THE CANARY COALITION,           )
                                )
            Plaintiffs,         )
                                )
        v.                      )
                                )
SAMUEL W. BODMAN, in his official )
capacity as Secretary of the United States )     No. 1:08-cv-00380-RMU
Department of Energy; HENRY M.   )
PAULSON, JR., in his official capacity as )
Secretary of the United States Department )
of the Treasury; VICTOR K. DER, in his )
official capacity as Deputy Secretary for )
Clean Coal; and JOSEPH GLOVE, III, in )
his official capacity as Program Analyst for )
the Office of Clean Energy Systems,  )
                                )
            Defendants.          )
_____)

**[PROPOSED] ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

This matter is presently before the Court upon Defendants' motion to dismiss Plaintiffs'

complaint.  Upon reading the memoranda in support of and in opposition to the motion, the

Court holds that this Court does not have subject matter jurisdiction over this case.  Plaintiffs

lack Article III standing to bring their National Environmental Policy Act claim.  In addition,

Plaintiffs have not challenged a final agency action with respect to the Department of Energy.

Defendants' motion is hereby GRANTED.   The clerk is directed to enter judgment dismissing

Plaintiffs' complaint in its entirety, with each party to bear its own costs.  It is so ORDERED.

DATED this ____ day of _____, 2008.

                                    _____
                                    **Ricardo M. Urbina**
                                    United States District Court Judge