UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| APPALACHIAN VOICES and<br>THE CANARY COALITION, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SAMUEL W. BODMAN, in his official<br>capacity as Secretary of the United States<br>Department of Energy; HENRY M.<br>PAULSON, JR., in his official capacity as<br>Secretary of the United States Department<br>of Treasury; VICTOR K. DER, in his<br>official capacity as Deputy Secretary for<br>Clean Coal; and JOSEPH GLOVE, III, in<br>his official capacity as Program Analyst for<br>the Office of Clean Energy Systems, | ) | No. 1:08-cv-00380-RMU |
| | ) | |
| Defendants. | ) | |

_____

## DEFENDANTS' REPLY IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

_____

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Division

RACHEL A. DOUGAN
JASON BRUNO
Trial Attorneys
Environment and Natural Resources Division
United States Department of Justice
Benjamin Franklin Station, P.O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 616-5082
Facsimile: (202) 305-0506
Rachel.Dougan@usdoj.gov

## TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      I.      Plaintiffs Lack Article III Standing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

            A.      Plaintiffs Cannot Show That The Tax Credit Allocations Have
                   Threatened Any Injury To Their Particularized Interests . . . . . . . . . . . . . 3

            B.      Plaintiffs Have Failed To Demonstrate That Their Injuries Would Be
                   Redressed By A Favorable Decision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

            C.      Plaintiffs Do Not Even Attempt To Show Injury Related To Eight Of
                   The Nine Challenged Tax Credit Allocations . . . . . . . . . . . . . . . . . . . . . . 9

      II.     Because DOE Has Not Taken A Final Agency Action, This Court Lacks
             Jurisdiction Over Claims Against The DOE Defendants . . . . . . . . . . . . . . . . . . 11

      CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## <u>TABLE OF AUTHORITIES</u>

**FEDERAL CASES**

Allen v. Wright,
    468 U.S. 737 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

Bennett v. Spear,
    520 U.S. 154 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Cmty. for Creative Non-Violence v. Pierce,
    814 F.2d 663 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Coal. for Underground Expansion v. Mineta,
    333 F.3d 193 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Dellums v. U.S. Nuclear Regulatory Comm'n,
    863 F.2d 968 (D.C. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Dep't of Transp. v. Pub. Citizen,
    541 U.S. 752 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fla. Audubon Soc'y v. Bentsen,
    94 F.3d 658 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3-6

FTC v. Standard Oil Co.,
    449 U.S. 232 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Karst Envtl. Educ. & Prot., Inc. v. EPA,
    403 F. Supp. 2d 74 (D.D.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

Lemon v. Geren,
    514 F.3d 1312 (D.C. Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Lujan v. Defenders of Wildlife,
    504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Nat'l Ass'n of Homebuilders,
    417 F.3d 1272 (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Simon v. E. Ky. Welfare Rights Org.,
    426 U.S. 26 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 6

**FEDERAL STATUTES**

26 U.S.C. § 48A(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

26 U.S.C. § 48A(e)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

26 U.S.C. §§ 48A-48B . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

26 U.S.C. § 48B(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

33 U.S.C. § 1311 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**Introduction**

Plaintiffs cannot demonstrate Article III standing to bring their claims because they have not alleged facts sufficient to fulfill the three requirements that make up the constitutional minimum for standing.

To satisfy the causation element of standing, Plaintiffs must show that they have particularized injuries that are fairly traced to the challenged government action.  In their opposition, Plaintiffs do not even attempt to show that the "particularized injury" they allege – air quality impacts from Duke Energy's proposed Cliffside project – is the result of the tax credit allocations by the Internal Revenue Service ("IRS").  Although Plaintiffs state that the tax credits are important to the power plant companies, they have not shown, as they must, that the tax credits are a "substantial factor" in influencing the third-party power plant companies' behavior. Docket No. 18, Defs.' Mem. at 9-12.  "The Supreme Court itself has noted the improbability of establishing the necessary likelihood of some result when that result depends on predicting the acts of even a single 'interest group' who is unrepresented in the instant litigation . . . ." Fla. Audubon Soc'y v. Bentsen, 94 F.3d 658, 670 (D.C. Cir. 1996) (en banc) (citing Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 42-46) (1976)).

Plaintiffs also fail to show that the injury they allege could be redressed by a favorable decision by this Court.  Plaintiffs argue that the redressability element is met because the preparation of an environmental impact statement ("EIS") might persuade Defendants that the proposed clean coal projects should be altered or that impacts from the projects should be mitigated.  Docket No. 19, Pls.' Opp'n at 12-13.  However, the only challenged agency action is IRS' decision to approve the tax credits.  Because this decision must be based on the

1

Congressionally-mandated criteria set forth in the Internal Revenue Code ("IRC") and not based on a National Environmental Policy Act ("NEPA") analysis, Plaintiffs' redressability argument is without merit.  Moreover, Plaintiffs' argument must fail because the decision about whether or how to construct the clean coal projects is not something Defendants have control over as a result of the tax credit programs.  Finally, Plaintiffs make no allegations of harm related to eight of the nine projects and, they do not even attempt to show they have interests that are affected by the challenged government action itself (the tax credit allocations).  As such, Plaintiffs lack standing and this Court should dismiss Plaintiffs' lawsuit.

As Defendants have shown, there is an additional reason for dismissing the case against the named Department of Energy officials ("the DOE Defendants").  The actions taken by DOE as a consulting agency in administration of the IRC Sections 48A and 48B tax credit program do not constitute "final agency action" subject to judicial review under the Administrative Procedure Act ("APA").  DOE reviewed the applications for the tax credits and provided its technical advice to IRS as to which applications met the statutory requirements for the program.  DOE did not determine which applications would receive approval letters and thus did not take any action that "marked the consummation" of the challenged decision-making process or determine Plaintiffs' rights or obligations.  For these reasons, this Court lacks subject matter jurisdiction and Plaintiffs' lawsuit should be dismissed.

<u>Argument</u>

I.    **Plaintiffs lack Article III standing.**

    A.    **Plaintiffs cannot show that the tax credit allocations have threatened any injury to their particularized interests.**

In <u>Florida Audubon Society</u>, in reviewing whether plaintiffs lacked standing to bring a NEPA challenge to a tax credit program, the D.C. Circuit stated that "unless there is a <u>substantial probability</u> that the substantive agency action . . . created a demonstrable risk, or caused a demonstrable increase in an existing risk, of injury to the particularized interests of the plaintiff, the plaintiff lacks standing."  94 F.3d at 669 (internal citation omitted) (emphasis added) (holding that plaintiffs lacked standing).  As demonstrated in Defendants' opening memorandum, Plaintiffs cannot show that it is sufficiently probable that their alleged injuries – air quality impacts from the proposed Cliffside project – would be caused by the IRS' allocation of tax credits to nine proposed clean coal projects, including Cliffside.  Defs.' Mem. at 8-12.

Plaintiffs acknowledge that "an adequate causal chain must contain at least two links: one connecting the omitted EIS to some substantive government decision that may have been wrongly decided because of the lack of an EIS and one connecting that substantive decision to the plaintiff's particularized injury."  <u>Fla. Audubon Soc'y</u>, 94 F.3d at 668 (cited in Pls.' Opp'n at 10).  Therefore, Plaintiffs must show that Defendants' failure to prepare an EIS may have caused the tax credit allocations to be "wrongly decided" <u>and</u> that the tax credit allocations are causally connected to the alleged particularized injury – environmental harm from the Cliffside project.  Cf. <u>id.</u> at 668-69.

Plaintiffs have failed to meet this standard because they have completely failed to connect the substantive decision (IRS' approval of tax credits in accordance with the IRC) to

3

their alleged particularized injuries (environmental harms from one of the projects that has been allocated tax credits).   In their opposition, Plaintiffs argue that there is a "four-link causal chain" that connects their alleged injuries to the challenged government action.  See Pls.' Opp'n at 11. Plaintiffs allege: (1) they have interests in using the Great Smoky Mountains National Park ("GSMNP"), (2) in the absence of mitigation measures, Duke Energy's proposed power plant located approximately 200 miles away will have adverse environmental impacts in the GSMNP; (3) Plaintiffs did not prepare an EIS,[1]/ and (4) the failure to prepare an EIS "threatens Plaintiffs' members with harm to their particularized interests–harm that could readily be eliminated or reduced through the imposition of conditions requiring various mitigation measures in order to qualify for a tax credit."  Id.

Plaintiffs' causation argument is deeply flawed for two reasons.  First, the challenged government action – the tax credit allocations – is conspicuously absent from Plaintiffs' "four-link causal chain."   Indeed, Plaintiffs do not even attempt to show that the tax credit allocations have resulted in a "demonstrable increase in an existing risk" of injury to their interests.  Instead, Plaintiffs focus only on their alleged procedural injury from the failure to prepare an EIS, which is insufficient to demonstrate causation sufficient for standing.  Fla. Audubon Soc'y, 94 F.3d at 668-69.  Second, Plaintiffs' causation argument rests on inaccurate assumptions, namely that Defendants have the ability to put conditions on the projects that are allocated tax credits.  In the

---

[1]/      Plaintiffs incorrectly label the undisputed fact that Defendants did not prepare an EIS as an admission that they have not complied with NEPA.  As Defendants have explained in their response to Plaintiffs' motion for preliminary injunction, Defendants were not required under NEPA to prepare an EIS.  See Docket No. 6, Defs.' PI Resp. at 21-31.  Because this issue goes to the merits of Plaintiffs' claim and not to Plaintiffs' standing, Defendants will not address this issue further in this brief.

"fourth link" of Plaintiffs' chain, Plaintiffs apparently assume that had Defendants prepared an

EIS for the challenged tax credit allocations, they might have required tax credit recipients to

adopt "various mitigation measures" and that these mitigation measures would have redressed

Plaintiffs' alleged injuries.  Pls.' Opp'n at 11.  Plaintiffs argue, without citation, that Defendants

have "unfettered discretion to impose conditions aimed at mitigating the severe effects of Duke's

power plant." Id.  This argument is without merit because, as explained in Defendants' opening

memorandum, Defs.' Mem. at 13-14, and further below, supra at Part C, Plaintiffs are simply

wrong that Defendants have control over the projects as a result of the allocated tax credits.

Finally, in a footnote, Plaintiffs state that they will not "waste the Court's time dealing"

with several of the Supreme Court and D.C. Circuit standing cases cited by Defendants because

those cases did not involve NEPA claims.[2]/  Pls.' Opp'n at 9 n.3.  As explained in Defendants'

opening memorandum, these cases are highly relevant to the legal issue before the Court because

they addressed whether plaintiffs challenging IRS' actions under the tax code that pertained to

third parties had met the causation element of standing.[3]/  Defs.' Mem. at 8-12 (discussing Allen

v. Wright, 468 U.S. 737 (1984); Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26 (1976);

Dellums v. U.S. Nuclear Regulatory Comm'n, 863 F.2d 968 (D.C. Cir. 1988); Cmty. for

Creative Non-Violence v. Pierce,  814 F.2d 663 (D.C. Cir. 1987)).  In each of these cases, the

---

[2]/    The only case that either party has cited that involved a NEPA challenge to a tax credit
program is Florida Audubon Society, 94 F.3d 658.  In that case, as Defendants have described,
Defs.' Mem. at 10, the D.C. Circuit determined that the plaintiffs lacked standing because they
could not show that the challenged government action had caused their asserted injuries.  The
same outcome is warranted here.

[3]/    This case presents a similar situation in that Plaintiffs are also challenging IRS'
administration of the tax code with respect to third parties not before the Court.

plaintiffs' standing was defeated because they could not show that the challenged agency action caused the alleged injury. Plaintiffs provide no rationale for distinguishing those cases' discussion of causation simply because the claims at issue in those cases had not been brought under NEPA. Indeed, the D.C. Circuit found the Simon and Allen cases to be instructive to its analysis of whether plaintiffs had standing to bring a NEPA claim in Florida Audubon Society. See Fla. Audubon Soc'y, 94 F.3d 658 (citing Simon on pages 663, 664, 668, 669 and 670 and Allen on pages 663 and 670). The D.C. Circuit specifically discussed these cases in explaining the improbability that plaintiffs will be able to show a causal connection between their injury and a government action when the chain of causation depends on the actions of a third party that is not before the Court (such as the power plant companies in this litigation). E.g. Fla. Audubon Soc'y, 94 F.3d at 670 (citing Simon, 426 U.S. at 42-46) ("In Simon, only the independent acts of one 'interest group' – hospitals – eliminated the possibility of proving causation."). Here, because Plaintiffs cannot show that the tax credit allocation was a substantial factor in motivating the acts of the third-party power plant companies, Plaintiffs cannot prove causation. See Defs.' Mem. at 8-12.

In sum, Plaintiffs cannot show their alleged injuries are fairly traceable to IRS' allocation of tax credits based on the Congressionally-mandated criteria set forth in the Internal Revenue Code.

**B.    Plaintiffs have failed to demonstrate that their injuries would be redressed by a favorable decision.**

As Defendants explained in their opening memorandum, in cases where the plaintiffs allege a procedural violation, such as a NEPA claim, the redressability element can generally be satisfied where the Court may order the agency to undertake the procedure. See Defs.' Mem. at

6

12-13.  However, as the Supreme Court has stated, it would not "satisfy NEPA's 'rule of reason' to require an agency to prepare a full EIS due to the environmental impact of an action it could not refuse to perform."  Dep't of Transp. v. Pub. Citizen, 541 U.S. 752, 769 (2004) (holding that EIS was not required under NEPA to consider effects that "an agency has no ability to prevent . . . due to its limited statutory authority over the relevant actions").  Here, the IRS must allocate tax credits to projects based on the statutory criteria established by Congress, not the outcome of a NEPA analysis.  Therefore, unlike a typical NEPA case, Plaintiffs' injuries cannot be redressed by the Court ordering a NEPA analysis.[4]/  See Docket No. 6, Defs.' PI Resp. at 21-28; Docket No. 18, Defs.' Mem. at 12-14.

Even assuming that after preparing an EIS, Defendants agreed with Plaintiffs that Duke Energy should be required to adopt mitigation measures for the Cliffside project, see Pls.' Opp'n

---

[4]/      As Defendants have shown, the complete lack of causation between the agency action and the purported underlying harm also leads to the conclusion that Plaintiffs cannot meet the redressability prong.  Defs.' Mem. at 14-15.  Specifically, even if Defendants had authority to withhold the tax credit allocations as a result of a NEPA analysis, which they decidedly cannot, there is no way to know whether or how the third party power plant companies would respond.  Plaintiffs emphasize that in other NEPA cases, such as challenges to timber sales or highway construction projects, the alleged environmental harm is often traced to the acts of non-agency third party actors and yet plaintiffs' injuries are considered redressable by a NEPA analysis.  Pls.' Opp'n at 12-13.  However, in contrast to the examples highlighted by Plaintiffs, the third party actions here are not caused by or contingent upon the challenged agency decision.  For example, in a typical NEPA challenge to an Agency's timber sale decision, a third party company cannot harvest timber on government land unless it is authorized to do so in accordance with the Agency's decision.  Because a NEPA analysis may persuade the Agency to alter its decision and cause the third party to change its actions, the redressability prong is generally found to be met.  In contrast, Duke Energy may move forward (or not move forward) with the Cliffside project regardless of whether a NEPA analysis could persuade the IRS to alter the allocation of tax credits.  As a result of this lack of causation between Plaintiffs' alleged injury and the challenged government action, the redressability element is also not satisfied.

at 12, or that a wind energy project was a preferred alternative over the Cliffside project,[5]/ Plaintiffs' asserted injuries would still not be redressed by a NEPA analysis for the tax credit allocations. Defendants do not have the authority to change the criteria for allocating tax credits based on a NEPA analysis. Nor does the tax credit program give Defendants control over the projects that have applied for tax credits. See, e.g., Rekos Decl. at ¶¶ 18-21 (previously filed as an attachment to Docket No. 6). In accordance with Sections 48A and 48B of the tax code, the IRS must allocate tax credits by reviewing the applications it has received (not hypothetical alternative projects) and determining whether the proposed projects meet the statutory requirements for a tax credit.[6]/

In sum, unlike the agency defendants in most NEPA cases, which have the option of reaching a different decision following the preparation of an EIS, Defendants here cannot be "persuaded to alter what [is] proposed" because they have no discretion to do so. Lemon v. Geren, 514 F.3d 1312, 1315 (D.C. Cir. 2008). The IRS must base its allocations on the statutory requirements, and not on a NEPA document. As such, Plaintiffs cannot meet the redressability prong of standing.

---

[5]/    Plaintiffs' member Roger Hawkins asserts that "alternatives, such as wind energy" should have been "evaluated in approving the tax credits [f]or Duke Energy's Cliffside project." Pls.' Opp'n at 3.

[6]/    A wind energy project would not likely meet these criteria. The Section 48A tax credit for projects that do not use integrated gasification combined cycle ("IGCC") technology, such as the Cliffside project, must be awarded to facilities that use advanced coal-based generation technology and utilize a fuel input of at least 75% coal. 26 U.S.C. § 48A(e)(1)(B).

**C.     Plaintiffs do not even attempt to show injury related to eight of the nine challenged tax credit allocations.**

Plaintiffs' Complaint challenges the tax credit allocations to nine proposed clean coal projects. However, Plaintiffs' claim of underlying injury is not based on the tax credit allocations. This fact alone undermines their claim that they have asserted a particularized injury to their interests from the challenged agency action.

Instead of asserting they have been harmed by the tax credit allocations, Plaintiffs allege that they will be injured by the potential environmental impacts from the proposed projects that may claim the credits. However, as explained in Defendants' opening memorandum, Plaintiffs have not even alleged, much less shown, that they have any geographic connection to eight of the nine project areas and have not asserted any facts to show any harm from those eight projects. See Defs.' Mem. at 16-18. Plaintiffs' opposition memorandum does nothing to cure this defect. See generally Pls.' Opp'n (asserting no facts related to any proposed project other than Duke Energy's proposed Cliffside facility). Therefore, Plaintiffs have not shown the requisite injury-in-fact to have standing to challenge the tax credit allocations for eight of the nine projects and their challenge to those tax credit allocations should be dismissed.

In their opposition, Plaintiffs repeatedly misconstrue Defendants' arguments. Contrary to Plaintiffs' assertions, Defendants did not make any arguments related to Mr. Hawkins' "geographic proximity" to Duke Energy's proposed project. Pls.' Opp'n at 6. Nor did Defendants argue that the proposed Cliffside project was "better for the environment." Id. at 8. Rather, Defendants merely argued that the burden is on Plaintiffs to provide factual support for the general, speculative assertions contained in their Complaint that their members would be injured as a result of the Cliffside project.

9

Plaintiffs have now, in their opposition memorandum, stated that they have particular members who are concerned that they will be harmed by air pollution from the not-yet-operational Cliffside project.[7]/ Pls.' Opp'n at 3-5. They also assert, based on a non-party's preliminary comments on a draft permit, that the Cliffside project will have particular adverse impacts.[8]/ Id. at 2, 6-9. As described in detail above, even assuming these assertions are sufficient to – at the motion to dismiss stage – demonstrate an injury-in-fact,[9]/ this Court still does not have jurisdiction over Plaintiffs' claim because Plaintiffs cannot meet the causation or redressability elements of standing. As such, this Court should dismiss Plaintiffs' complaint in its entirety.

---

[7]/    Plaintiffs state that Mr. Roger Hawkins, who lives in Union Mills, North Carolina, approximately 20 miles from the proposed Cliffside project, is concerned about how the new facility will negatively affect his health. Pls.' Opp'n at 3; see also Decl. Of Hawkins at ¶¶1, 3 (Docket No. 3-6); Pls.' PI Mem. at 13 (Docket No. 3-2). Plaintiffs also state that Ms. Tracy Davids and Ms. Judith Hallock, both of whom use and enjoy the Great Smoky Mountains National Park ("GSMNP"), located about 200 miles away from the proposed Cliffside project, are concerned about impacts of the new facility on air quality in the GSMNP. Pls.' Opp'n at 4-5; see also Decl. of Davids at ¶¶ 1, 6-7 (Docket No. 19-4) Decl. of Hallock at ¶¶ 1, 15 (Docket No. 19-5).

[8]/    Plaintiffs cite the National Park Service's preliminary comments on Duke Energy's permit application to the North Carolina Department of Environment and Natural Resources. Pls.' Opp'n at 2. These comments, dated October 31, 2007, state that the proposed new Cliffside unit would "by itself" have a "real-world effect" on air quality at GSMNP; to address these impacts, the agency makes various recommendations, including recommendations related to mitigation and monitoring. Pls.' Exs. 9 & 10 (Docket Nos. 19-2 & 19-3). Plaintiffs do not state whether any of these recommendations were adopted nor do they provide the terms of any final permit.

[9]/    Should this case proceed to the summary judgment stage, Plaintiffs would be required to make a "factual showing of perceptible harm." Lujan v. Defenders of Wildlife, 504 U.S. 555, 566 (1992).

**II.    Because DOE has not taken a final agency action, this Court lacks jurisdiction over claims against the DOE Defendants.**

As an initial matter, it appears that Plaintiffs and Defendants are in agreement that a final agency action is a prerequisite for judicial review under the APA.  Moreover, the parties agree on the two-prong test for determining whether a challenged action is a final agency action.  That is, a final agency action (1) "marks the consummation of the agency's decision making process" and (2) the action "must be one by which rights or obligations have been determined or from which legal consequences will flow."  Defs.' Mem. at 21-22 (citing Karst Envtl. Educ. & Prot., Inc. v. EPA, 403 F. Supp. 2d 74, 80 (D.D.C. 2005)); Pls' Opp'n at 14 (same).  In their opposition memorandum, however, Plaintiffs misapply both prongs of this test to DOE's actions.

First, Plaintiffs' assertion that DOE "consummated its decision making process" misses the point – the "action" that Plaintiffs have challenged is IRS' allocation of tax credits for qualifying advanced coal projects and qualifying gasification projects under 26 U.S.C. §§ 48A-48B, not the DOE's technical advice to the IRS as to which applicants met the specific statutory requirements for the program.  See IRS Not 2006-24 at § 4.02(9); IRS Not 2006-25 at § 4.02(8).  Although, as Plaintiffs point out, DOE's Congressionally-mandated role as a consulting agency to the IRS ended after DOE provided its technical expertise to the IRS, see 26 U.S.C. § 48A(d)(1); id. at § 48B(d)(1), such activity was not the "consummation of the decision making process" that Plaintiffs are challenging.  Rather, Plaintiffs are challenging the IRS' award of tax credits for certain coal and gas projects.

The case that Plaintiffs cite to support their argument that a defendant's actions are consummated "even if they are not the final step in an entire regulatory process," Nat'l Ass'n of Homebuilders, 417 F.3d 1272 (D.C. Cir. 2005), is distinguishable.  In Homebuilders, the plaintiff

11

brought suit against defendant Army Corps of Engineers ("Corps") for its actions under the Clean Water Act, 33 U.S.C. § 1311 ("CWA"), for failing to prepare a programmatic EIS when the agency modified the way it issued permits for discharge of "dredge or fill materials." The Corps could issue a permit under section 404 of the CWA either on a class-wide ("general permit") or a case-by-case ("individual permit") basis. Id. at 1275. The process for obtaining an individual permit is a longer, more comprehensive procedure than the process for obtaining a general permit. Id. at 1275. The litigation arose when the Corps proposed to reissue a number of existing "general permits" under the new "individual permit" process. Plaintiffs brought suit, alleging that the Corps violated NEPA by failing to prepare an EIS for such action. After the District Court granted summary judgment for the Corps, the Court of Appeals for the District of Columbia Circuit reversed, stating that "there is nothing tentative or 'interlocutory' about the issuance of permits allowing any party who meets certain conditions to discharge fill and dredge material into navigable waters," id. at 1278. This is so, the Court stated, because the increased delay or project modifications required in seeking an individual permit "directly affect the investment and project development choices of those whose activities are subject to the CWA." Id. at 1280 (emphasis added).

The suit in Homebuilders, therefore, was directly related to the action that the plaintiff complained of – that is, a change in the way the Corps categorized permits (i.e., the Corps' actions are the very subject of the complaint). In the case before this Court, in contrast, the DOE's technical advice to IRS regarding which proposed projects met specific technical criteria is not the ultimate action that is at the heart of Plaintiffs' case, but rather is ancillary to IRS' award of tax credits to qualifying projects. At issue before the Court is IRS' award, not DOE's

12

advice regarding whether a proposed project has met the technical specifications of the IRC.

Plaintiffs also fail to show that DOE's actions meet the second prong of the "final agency action" test, which requires that an agency's actions "must be one by which rights or obligations have been determined or from which legal consequences will flow." Karst, 403 F. Supp. 2d at 80. Plaintiffs' statement that "DOE altered the legal regime under which the IRS' analysis took place and violated Plaintiffs' rights by approving the plans without any NEPA analysis," Pls' Opp'n at 17, misconstrues the DOE's role in the tax credit application process. DOE did not "approve" any of the applications for tax credits, but merely provided its technical expertise to IRS in assessing the "technical and financial feasibility of the potential projects" against the requirements laid out by Congress. See Rekos Decl. at ¶¶ 9, 13-14. In addition, Plaintiffs have failed to show that their rights have been changed as a result of DOE's technical advice to IRS. See, e.g., Homebuilders, 417 F.3d at 1278 (citing FTC v. Standard Oil Co., 449 U.S. 232, 239 (1980)). Plaintiffs' repeated arguments that DOE's "refusal to perform any NEPA analysis" constitutes a final agency action that has "determined" their rights, Pls.' Opp'n at 14-15, ignores case law that holds that the failure to prepare an EIS is not itself a final agency action. See Coal. for Underground Expansion v. Mineta, 333 F.3d 193, 196 n.6 (D.C. Cir. 2003).

Finally, Plaintiffs' reliance on Bennett v. Spear, 520 U.S. 154 (1997), is inapposite. In Bennett, the plaintiff brought suit against the Fish and Wildlife Service ("Service"), claiming that its Biological Opinion failed to comply with the Endangered Species Act. The defendant argued that the Service's Biological Opinion was not a redressable "final agency action." The Supreme Court reasoned that the Service "altered the legal regime to which the action agency is subject" because the Service's Biological Opinion and accompanying Incidental Take Statement

13

had "direct and appreciable legal consequences." <u>Id.</u> at 178 (Service's action altered legal regime by authorizing action agency "to take the endangered species if (but only if) it complies with the prescribed conditions."). In contrast, DOE's advice to IRS does not "alter the [IRS'] legal regime" vis-a-vis the tax credit applications, because the IRS' legal mandate before receiving DOE's advice remained the same as after the consultation: that is, to provide tax credits to qualifying applicants in accordance with the statutory criteria. As such, DOE's actions do not have any "direct and appreciable legal consequences" upon Plaintiffs.

Therefore, Plaintiffs have failed to identify a final agency action by the DOE Defendants.

## <u>Conclusion</u>

For the foregoing reasons and the reasons stated in Defendants' opening memorandum, Defendants respectfully request that this Court grant Defendants' motion to dismiss and dismiss Plaintiffs' Complaint in its entirety.

Respectfully submitted this 13th day of June 2008.

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Division

/s/ Rachel A. Dougan
RACHEL A. DOUGAN, DC Bar # 485507
JASON BRUNO, DC Bar # 472290
Environment and Natural Resources Division
United States Department of Justice
Benjamin Franklin Station, P.O. Box 663
Washington, D.C.  20044-0663
Telephone: (202) 616-5082 (Dougan)
Facsimile: (202) 305-0506
Rachel.Dougan@usdoj.gov

Of Counsel:

CHARLES B. RAMSEY
Office of Associate Chief Counsel
Internal Revenue Service
U.S. Department of Treasury
Washington, D.C.
(202) 622-3110

JANET MASTERS
Office of General Counsel
U.S. Department of Energy
Washington, D.C.
(202) 586-3415

NATALIE APPETTA
Office of Chief Counsel
National Energy Technology Laboratory
U.S. Department of Energy
Morgantown, WV
(304) 285-2035

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2008, a copy of the foregoing DEFENDANTS' REPLY

IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS and related proposed order, was

served by CM/ECF electronic filing on the following attorneys of record:

Scott A. Gollwitzer
APPALACHIAN VOICES
16 Eagle Street, Suite 200
Asheville, NC 28801
(828) 505-1963
scott@appvoices.org

Stephen Holmes Novak
WILDLAW
46 Haywood Street
Suite 323
Asheville, NC 28801
(828) 252-9223
wildlawNC@aol.com

In addition, pursuant to this Court's Standing Order For Civil Cases at Section 3(a), a

courtesy copy will be served on the Court via courier on June 13, 2008.

/s/ Rachel A. Dougan
Counsel for Defendants

16