UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

APPALACHIAN VOICES and )
THE CANARY COALITION, )
                     )
        Plaintiffs, )
                     )
    v. )
                     )
SAMUEL W. BODMAN, in his official )
capacity as Secretary of the United States )     No. 1:08-cv-00380-RMU
Department of Energy; HENRY M. )
PAULSON, JR., in his official capacity as )
Secretary of the United States Department )
of Treasury; VICTOR K. DER, in his )
official capacity as Deputy Secretary for )
Clean Coal; and JOSEPH GLOVE, III, in )
his official capacity as Program Analyst for )
the Office of Clean Energy Systems, )
                     )
        Defendants. )
_____)

_____

**DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

_____

RONALD J. TENPAS
Assistant Attorney General
U.S. Department of Justice
Environment and Natural Resources Division

RACHEL A. DOUGAN
JASON BRUNO
Natural Resources Section
Benjamin Franklin Station, P.O. Box 663
Washington, D.C.  20044-0663
Telephone: (202) 616-5082 (Dougan)
Facsimile: (202) 305-0506
Rachel.Dougan@usdoj.gov

MEREDITH L. FLAX
Wildlife and Marine Resources Section
Ben Franklin Station, P.O. Box 7369

Washington, D.C. 20044-7369
Telephone: (202) 305-0404
Facsimile: (202) 305-0275
meredith.flax@usdoj.gov

<u>TABLE OF CONTENTS</u>

DEFENDANTS' MOTION TO DISMISS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    I.     The Tax Credit Programs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    II.    Plaintiffs' First Amended Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Legal Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    I.     Plaintiffs lack Article III standing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

          A.     Plaintiffs have not alleged facts sufficient to
              demonstrate an injury-in-fact . . . . . . . . . . . . . . . . . . . . . . . . . 10

              1.     Plaintiffs do not make allegations
                     averring injury related to eight of the
                     nine challenged tax credit allocations . . . . . . . . . . . . . . 11

              2.     With respect to Duke Energy's Cliffside
                     project, Plaintiffs have not alleged facts to
                     show that the allocation of tax credits will
                     substantially increase the risk of harm to
                     their interest in listed species . . . . . . . . . . . . . . . . . . . 12

          B.     Plaintiffs also cannot establish causation or
              redressibility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

              1.     Plaintiffs' alleged injury to their opportunities
                     to view listed species cannot be fairly traced to
                     the allocation of tax credits . . . . . . . . . . . . . . . . . . . . . . 14

2.    A favorable decision is not substantially
likely to redress Plaintiffs' asserted injury
to their interest in observing listed species  . . . . . . . . . .  18

Conclusion   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

## TABLE OF AUTHORITIES

<u>CASES</u>                                                                                      <u>PAGE</u>

* <u>Allen v. Wright</u>, 468 U.S. 737 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 14

<u>American Forest Res. Council v. Hall</u>, 533 F. Supp. 2d 84, 90 (D.D.C. 2008) . . . . . . . . . . . . . . 1

<u>American Littoral Soc. v. EPA</u>, 199 F. Supp. 2d 217, 244 fn. 16 (D.N.J. 2002)  . . . . . . . . . . . . 16

<u>American Soc'y of Travel Agents, Inc. v. Blumenthal</u>, 566 F.2d 145, 149-150 (D.C. Cir. 1977),
cert. denied, 435 U.S. 947 (1978)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

<u>Cabinet Mountains Wilderness/Scotchman's Peak Grizzly Bears v. Peterson</u>, 685 F.2d 678, 685
(D.C. Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

<u>California Forestry Ass'n v. Thomas,</u> 936 F. Supp. 13, 18 (D.D.C. 1996) . . . . . . . . . . . . . . . . 20

<u>Commodity Futures Trading Comm'n v. Nahas</u>, 738 F.2d 487, 492 n. 9 (D.C. Cir. 1984) . . . . . . 7

* <u>Community for Creative Non-Violence v. Pierce</u>,
814 F.2d 663, 669 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 17-20

<u>Defenders of Wildlife v. Gutierrez</u>, 532 F.3d 913, 924-25 (D.C. Cir. 2008)  . . . . . . . . . . . . . . . 18

<u>Defenders of Wildlife v. Kempthorne,</u> Civ. No. 04-1230 (GK), 2006 WL 2844232, at *19
(D.D.C. Sept. 29, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

<u>Dellums v. U.S. Nuclear Regulatory Comm'n,</u> 863 F.2d 968, 980 (D.C. Cir. 1988)  . . . . . . . . . 14

* <u>Florida Audubon Soc'y v. Bentsen</u>, 94 F.3d 658, 663 (D.C. Cir. 1996) (en banc)  . 8, 11, 15, 17

<u>Fulani v. Brady</u>, 935 F.2d 1324, 1327 (D.C. Cir. 1991), cert denied, 502 U.S. 1048 (1992) . . . . 9

<u>FW/PBS, Inc. v. City of Dallas</u>, 493 U.S. 215, 231 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

<u>Holmes-Martin v. Leavitt</u>, F. Supp. 2d Civ. No. 07-2128 (RMU), 2008 WL 3090273, at *4
(D.D.C. 2008)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

<u>Jones v. University of the District of Columbia</u>, 505 F. Supp. 2d 78, 83 (D.D.C. 2007)  . . . . . . 7

<u>Macharia v. United States</u>, 334 F.3d 61, 64, 67 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . 19

<u>Marsh v. Oregon Natural Res. Council</u>, 490 U.S. 360, 378 (1989) . . . . . . . . . . . . . . . . . . . . . . . 6

iii

McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936) . . . . . . . . . . . . . . . . . 7

National Ass'n of Home Builders v. Defenders of Wildlife, 127 S.Ct. 2518, 2535 (2007) . . . . . 6

National Ass'n of Home Builders v. U.S. Army Corps. of Eng'rs, 539 F. Supp. 2d 331, 337
(D.C. Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Papasan v. Allain, 478 U.S. 265, 286 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Public Citizen, Inc. v. National Highway Traffic Safety Admin., 489 F.3d 1279, 1295 (D.C. Cir.
2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Rasul v. Bush, 542 U.S. 466, 489 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Renne v. Geary, 501 U.S. 312, 316 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . 9

Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) . . . . . . . . . . . . . . . . . . . . . . . . 8

Thomson v. Gaskill, 315 U.S. 442, 446 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United Transportation Union v. ICC, 891 F.2d 908, 912 (D.C. Cir. 1989) . . . . . . . . . . . . . . 13, 17

Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,
454 U.S. 464, 471 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

* Warth v. Seldin, 422 U.S. 490, 507 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 15

STATUTES                                                                                    PAGE

5 U.S.C. § 704 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12
5 U.S.C. § 706(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
5 U.S.C. §§ 701-06 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
16 U.S.C. § 1536(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 16
16 U.S.C. §§ 1536(b)(3)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
26 U.S.C. § 48A(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
26 U.S.C. § 48A(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4
26 U.S.C. §§ 48A - 48B . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

RULES                                                               PAGE

7th Cir. 1981  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
Federal Rule of Civil Procedure 12(a)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3
Federal Rule of Civil Procedure 12(b)(1)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 7


REGULATIONS                                                         PAGE

50 C.F.R. § 402.14 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 16
50 C.F.R. § 402.14(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6
50 C.F.R. §§ 402.13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

## DEFENDANTS' MOTION TO DISMISS

Defendants hereby move this Court to dismiss Plaintiffs' First Amended Complaint (Docket No. 28) pursuant to Federal Rule of Civil Procedure 12(b)(1).  Defendants incorporate by reference their previously-filed Motion to Dismiss and supporting memoranda (Docket Nos. 18 & 20).  Both motions explain that this Court lacks subject matter jurisdiction because Plaintiffs lack Article III standing.  To avoid duplicating the efforts of both the Court and the parties, Defendants will not repeat their standing argument with respect to Plaintiffs' National Environmental Policy Act ("NEPA") claim.  Rather, this motion focuses only on Plaintiffs lack of standing to bring their newly-added Endangered Species Act ("ESA") claim.  Defendants also will not repeat their argument that Plaintiffs have not challenged a final agency action with respect to the Department of Energy because the requirement of final agency action applies equally to the ESA as it does to NEPA.  <u>American Forest Res. Council v. Hall</u>, 533 F. Supp. 2d 84, 90 (D.D.C. 2008).  Since the Court lacks jurisdiction over Plaintiffs' claims, Defendants respectfully request that this Court dismiss Plaintiffs' First Amended Complaint in its entirety.

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

**Introduction**

As with their Complaint, Plaintiffs' First Amended Complaint should be dismissed for

lack of standing and for failure to challenge a final agency action with respect to the Department

of Energy.  Plaintiffs recently amended their complaint to add a claim alleging that Defendants

violated the Endangered Species Act ("ESA").  Since Plaintiffs did not otherwise substantively

alter their complaint, Defendants address in this brief only Plaintiffs' lack of standing to bring

their ESA claim and incorporate by reference Defendants' Motion to Dismiss with respect to

Plaintiffs' lack of standing to bring their National Environmental Policy Act ("NEPA") claim

and Plaintiffs' failure to challenge final agency action as to the Department of Energy.

In their First Amended Complaint, Plaintiffs allege that Defendants' failure to engage in

ESA Section 7 consultation prior to allocating tax credits to nine advanced coal or gasification

projects injures their desire to observe ESA-listed species because the proposed projects will

emit air pollution that will allegedly adversely affect such species and their habitat.  First

Amended Complaint ("FAC") ¶¶ 2, 4, 11, 14, 17, 22, 25, 64-68.  Plaintiffs have made similar

allegations in one of the declarations they filed with their Opposition to Defendants' Motion to

Dismiss (Docket No. 19).  Declaration of Tracy Davids ("Davids Decl.") (Docket No. 19-4) ¶¶ 6,

7, 10.

Plaintiffs' allegations fail to meet their burden of demonstrating any of the three required

elements of standing: injury-in-fact, causation, and redressibility.  Lujan v. Defenders of

Wildlife, 504 U.S. 555, 560-61 (1992).  The reasons Plaintiffs' standing allegations for their

ESA claim fail are similar to the reasons that their NEPA standing allegations fail.  First,

2

Plaintiffs have not alleged a sufficient injury-in-fact because they  have not demonstrated any geographic nexus to eight of the nine projects and have failed to demonstrate a substantially increased risk of harm to their alleged interest in ESA-listed species from the tax credit allocations for any of the nine projects.  Second, even if Plaintiffs could allege a sufficient injury-in-fact, they cannot demonstrate that any such injury is fairly traceable to the allocation of the tax credits.  Third, the alleged harms are not substantially likely to be redressed through a favorable decision on the merits and the relief sought in the First Amended Complaint.

In sum, this Court lacks subject matter jurisdiction over Plaintiffs' ESA claim because Plaintiffs cannot demonstrate Article III standing.  Accordingly, Defendants respectfully request that this Court dismiss Plaintiffs' First Amended Complaint in its entirety.[1]/

### Factual Background[2]/

## I.      The Tax Credit Programs

Internal Revenue Code Sections 48A and 48B provide tax credits for qualifying advanced coal projects and qualifying gasification projects, respectively.  See 26 U.S.C. §§ 48A - 48B. For projects using integrated gasification combined cycle ("IGCC") technology and qualifying gasification projects, the credit for a taxable year is 20 percent of the qualified investment.  See 26 U.S.C. § 48A(a)(1); id. at § 48B(a).  For qualifying advanced coal projects that do not use IGCC, the credit for a taxable year is 15 percent of the qualified investment.  See 26 U.S.C. §

---

[1]/      This motion is filed under Federal Rule of Civil Procedure 12(b)(1), in lieu of an answer. Should this Court deny the motion, Defendants will file an answer in accordance with Federal Rule of Civil Procedure 12(a)(4).

[2]/      A more detailed description of the factual background relevant to this motion can be found on pages 2 through 7 of  Defendants' response to Plaintiffs' motion for a preliminary injunction (Docket No. 6).

48A(a)(2).

Congress authorized $1.3 billion of tax credits for the qualifying advanced coal program and $350 million of tax credits for the qualifying gasification project program. <u>See</u> 26 U.S.C. § 48A(d)(3)(B)(i)-(ii); <u>id.</u> at § 48B(d)(1). In accordance with the statute, the Secretary of Treasury has, in consultation with the Secretary of Energy, established programs for the allocation of tax credits. <u>See generally</u> IRS Notice 2006-24; IRS Notice 2006-25. Under these programs, the tax credits will be awarded to qualified projects through annual allocation rounds, until the aggregate credits are fully allocated. <u>See, e.g.,</u> IRS Notice 2006-24 at §§ 4.01, 4.02(5).

On November 30, 2006, Defendants announced that nine projects had been accepted in the first allocation round and $1 billion of tax credits had been allocated to those projects. <u>See</u> Docket No. 28, FAC ¶ 42.[3]/ Defendants' announcement stated that the nine projects are proposed to be located in various locations throughout the United States. <u>Id.</u> ¶ 45. The relevant taxpayers will need to meet various requirements in order to claim the credit that has been allocated to these projects. <u>See generally</u> IRS Notice 2006-24; IRS Notice 2006-25; <u>see also</u> Docket No. 6 at 6-7 (describing requirements of tax credit programs).

## II.    Plaintiffs' First Amended Complaint[4]/

Plaintiffs filed their First Amended Complaint on August 12, 2008 to add an ESA claim.

---

[3]/    <u>See also</u> DOE, Press Release dated November 30, 2006, and Fact Sheet, <u>available at</u> http://www.doe.gov/news/4495.htm (last visited May 21, 2008); IRS, Press Release dated November 30, 2006, <u>available at</u> http://www.irs.gov/newsroom/article/0,,id=164595,00.html (last visited May 21, 2008) (previously filed as Docket No. 6, Ex. 3)

[4]/    A detailed description of Plaintiffs' Complaint (Docket No. 1) is contained at pages 4 to 5 in Defendants' previously-filed Memorandum in Support of Motion to Dismiss (Docket No. 18). Plaintiffs' NEPA claim in the First Amended Complaint is the same as the claim in the original Complaint.

FAC ¶ 74.  This claim alleges that Defendants violated the ESA by failing to consult under ESA Section 7 before allocating tax credits to nine advanced coal or gasification projects.  Id. Plaintiffs assert that they are injured by Defendants' alleged failure to comply with the ESA.  Id. ¶¶ 17, 25.

The First Amended Complaint states that Plaintiffs – Appalachian Voices and The Canary Coalition – are organizations based in North Carolina.  See FAC ¶¶ 8, 19.  Plaintiffs assert they have members that "use and enjoy" areas "surrounding, and downwind of, Duke Energy's proposed Cliffside power plant in Rutherford and Cleveland counties in North Carolina" including viewing endangered and threatened species.  Id. ¶¶ 10-12, 21-23.  The Cliffside unit is one of the nine projects that was allocated tax credit during the initial allocation round.  Id. ¶ 45.  Plaintiffs do not assert they have any members that use or enjoy any of the areas where the other eight projects allocated tax credits were proposed.  See generally id. ¶¶ 10-12, 21-23.  Plaintiff Appalachian Voices also asserts it has members that "use and enjoy" the "coalfield regions of the central and southern Appalachian Mountains."  Id. ¶¶ 13-15.  Plaintiffs assert that "[a]t least one of the tax credit recipients, Duke Energy in North Carolina, currently obtains coal . . . [from] the Appalachian Mountains and Duke plans to continue using such coal to fuel its new power plant."  Id. ¶ 54.

Plaintiffs' First Amended Complaint asserts that coal-fueled power plants, including those receiving tax credits, are major sources of air pollution and are the "principle [sic] force driving the market for, and environmental degradation resulting from, mining, processing, transporting, burning and disposing coal."  Id. ¶¶ 55-56.

Plaintiffs ask the court to "[o]rder Defendants to revoke or suspend the tax credits until

they fully comply with the ESA by consulting with the FWS [U.S. Fish and Wildlife Service] and NMFS [National Marine Fisheries Service]" and to "[e]njoin Defendants from approving the remainder of the tax credits under the Energy Policy Act of 2005 until Defendants comply with the ESA."  Id. Prayer for Relief ¶¶ 4, 6.

## Legal Background

Under ESA Section 7(a)(2), each federal agency ("action agency") must ensure that any action "authorized, funded, or carried out by such agency" is "not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification" of designated critical habitat.  16 U.S.C. § 1536(a)(2).  To achieve this objective, the ESA requires the action agency to consult with either the U.S. Fish and Wildlife Service or the National Marine Fisheries Service whenever a federal action "may affect" an endangered species or designated critical habitat.  50 C.F.R. § 402.14(a).  Consultation may be formal or informal.  If a federal action is "likely to adversely affect" a listed species, the action agency and FWS enter into "formal consultation," a process which is described at length at 50 C.F.R. § 402.14.  Consultation is only required for discretionary actions of federal agencies. National Ass'n of Home Builders v. Defenders of Wildlife, 127 S.Ct. 2518, 2535 (2007).

Judicial review of ESA claims is governed by the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-06.  Cabinet Mountains Wilderness/Scotchman's Peak Grizzly Bears v. Peterson, 685 F.2d 678, 685 (D.C. Cir. 1982).  The APA limits judicial review to "final agency action."  5 U.S.C. § 704.  In addition, the APA imposes a narrow and highly deferential standard of review limited to a determination of whether the federal agencies acted in a manner that was arbitrary, capricious, an abuse of discretion or contrary to law.  5 U.S.C. § 706(2)(A);

Marsh v. Oregon Natural Res. Council, 490 U.S. 360, 378 (1989).

**Standard of Review**

As courts of limited jurisdiction, federal courts may only decide cases after the party asserting jurisdiction demonstrates that the dispute falls within the court's Constitutional and statutory jurisdiction. Rasul v. Bush, 542 U.S. 466, 489 (2004) (federal courts "possess only that power authorized by Constitution and statute") (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)). Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of a claim if the court "lacks jurisdiction over the subject matter" of a claim. Once challenged, the burden of establishing a federal court's subject matter jurisdiction by a preponderance of the evidence rests on the party asserting jurisdiction. Thomson v. Gaskill, 315 U.S. 442, 446 (1942); McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Commodity Futures Trading Comm'n v. Nahas, 738 F.2d 487, 492 n. 9 (D.C. Cir. 1984). The Supreme Court presumes that federal courts lack jurisdiction unless the contrary appears affirmatively from the record. Renne v. Geary, 501 U.S. 312, 316 (1991). Because subject matter jurisdiction focuses on the court's power to hear the claim, "the court must give the Plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim." National Ass'n of Home Builders v. U.S. Army Corps. of Eng'rs, 539 F. Supp. 2d 331, 337 (D.C. Cir. 2008) (citing Macharia v. United States, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D. D.C. 2001)). Moreover, in evaluating a motion under Rule 12(b)(1), the Court is not limited to the allegations of the complaint, but may also consider materials outside the pleadings in determining whether to dismiss for lack of jurisdiction. Jones v. University of

7

the District of Columbia, 505 F. Supp. 2d 78, 83 (D.D.C. 2007).

**Argument**

**I.      Plaintiffs lack Article III standing.**

Before this Court considers the merits of the issues raised in this case, it must determine

whether the Plaintiffs properly invoked its jurisdiction.  Steel Co. v. Citizens for a Better Env't,

523 U.S. 83, 94 (1998) (quoting Ex parte McCardle, 74 U.S. 506, 514 (1868) ("'Without

jurisdiction the court cannot proceed at all in any cause.'")).  One necessary condition precedent

to the exercise of a federal court's power to declare legal rights and to fashion appropriate

remedies in a given case is a demonstration by the party invoking the court's authority that it has

standing to sue.  Valley Forge Christian College v. Americans United for Separation of Church

and State, Inc., 454 U.S. 464, 471 (1982).  The constitutional minimum of standing contains

three elements.  Lujan, 504 U.S. at 561.  First, a plaintiff must show a concrete injury that is

actual or imminent and not conjectural.[5]/  Id. at 560.  Second, there must be a causal connection

between the injury and the conduct complained of – in other words, the injury must be fairly

traceable to the challenged action.  Id.  Third, it must be likely, as opposed to merely speculative,

that the injury will be redressed by a favorable decision.  Id. at 561.  The burden of establishing

these requirements rests squarely on Plaintiffs, and Plaintiffs must meet that burden by alleging

---

[5]/      Organizational plaintiffs, like Appalachian Voices, and the Canary Coalition, must show either that they have "representational standing," which is contingent upon the ability of at least one of its members to bring suit, or that they have "organizational standing," which turns instead on whether the organization itself has suffered an injury-in-fact.  Havens Realty Corp. v. Coleman, 455 U.S. 363, 378-379 (1982).  If suing on behalf of their members, organizations must show that their members meet these threshold requirements for standing.  Common Cause v. Federal Election Comm'n, 108 F.3d 413, 417 (D.C. Cir. 1997) (citing Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977)).

facts that "affirmatively" and "clearly" demonstrate standing. <u>FW/PBS, Inc. v. City of Dallas</u>, 493 U.S. 215, 231 (1990); <u>Florida Audubon Soc'y v. Bentsen</u>, 94 F.3d 658, 663 (D.C. Cir. 1996) (en banc) ("[A] showing of standing 'is an essential and unchanging' predicate to any exercise of . . . jurisdiction.") (citing <u>Lujan</u>, 504 U.S. at 560).

Moreover, in cases such as this one where a plaintiff seeks to attack the IRS' treatment of a third party under the tax code, there are "special problems attendant upon the establishment of standing." <u>Fulani v. Brady</u>, 935 F.2d 1324, 1327 (D.C. Cir. 1991), <u>cert denied</u>, 502 U.S. 1048 (1992) (plaintiffs challenging tax-exempt status of Commission for Presidential Debates lacked standing because their ability to participate in debates depended on the actions of third parties not before the court); <u>see also</u> <u>American Soc'y of Travel Agents, Inc. v. Blumenthal</u>, 566 F.2d 145, 149-150 (D.C. Cir. 1977), <u>cert. denied</u>, 435 U.S. 947 (1978) (travel agents did not have standing to challenge tax exemption for religious organizations that competed for tour business, where it was speculative whether denial of the exemption would in fact cause plaintiffs' business to improve). In such cases, a plaintiff's standing typically founders on the requirement to show causation and redressability because the alleged injury in such cases does not flow directly from the tax decision but from the independent actions of third parties. <u>See, e.g.</u>, <u>Allen v. Wright</u>, 468 U.S. 737 (1984); <u>Simon v. Eastern Ky. Welfare Rights Org.</u>, 426 U.S. 26 (1976); <u>Warth v. Seldin</u>, 422 U.S. 490, 507 (1975).

Here, in addition to being unable to meet the causation and redressability requirements, Plaintiffs have also failed to demonstrate any injury-in-fact. Because Plaintiffs have failed to meet their burden to allege facts sufficient to meet any of the three standing requirements, this Court should grant Defendants' motion to dismiss.

**A.      Plaintiffs have not alleged facts sufficient to demonstrate an injury-in-fact.**

Plaintiffs allege that their members' interest in viewing threatened and endangered species is injured by Defendants' failure to consult on the allocation of tax credits to Duke Energy for its Cliffside project, because the project will result in additional air pollution which they claim threatens the health and habitat of these species.   FAC ¶¶ 11, 14, 17, 25, 55, 64-67; Davids Decl. ¶¶ 6, 7, 10.  In addition, Plaintiffs have generally alleged a similar injury due to Defendants' failure to consult on the other eight projects it allocated tax credits to on November 30, 2006.  FAC ¶¶ 2, 4, 42, 45, 74.  Plaintiffs have not alleged an injury resulting from the allocation of the tax credits themselves.  See generally FAC.

Plaintiffs have not, and cannot, demonstrate a cognizable injury-in-fact for any of the nine projects that defendant Department of the Treasury has allocated tax credits.  While the desire to observe or enjoy an animal species can be a cognizable interest for standing purposes, Plaintiffs allegations here fail because they do not demonstrate harm to an interest which is (1) concrete and particularized[6]/ and (2) actual or imminent, not conjectural or hypothetical.  Lujan, 504 U.S. at 560, 562-63.   Specifically, Plaintiffs have failed to demonstrate:  (1) a concrete and particularized injury with respect to eight projects because they have not asserted any geographic connection to the relevant project areas; and (2) an actual or imminent injury with respect to Duke Energy's Cliffside project because they have not asserted facts showing the allocation of tax credits for the project will substantially increase the risk of harm to their interest in viewing

---

[6]/      To demonstrate a "particularized" injury, Plaintiffs must be injured in a personal and individual way.  Lujan, 504 U.S. at 560; see also Sierra Club v. Morton, 405 U.S. 727, 734-35 (1972) ("[T]he 'injury in fact' test requires more than an injury to a cognizable interest.  It requires that the party seeking review be himself among the injured.").

threatened and endangered species.

          **1.**      **Plaintiffs do not make allegations averring injury related to eight of the nine challenged tax credit allocations.**

For eight of the nine projects allocated tax credits on November 30, 2006, Plaintiffs' allegations of injury fail because they have not asserted facts to show they have any geographic connection to the relevant project areas. <u>Lujan</u>, 504 U.S. at 563. In order to demonstrate a concrete interest sufficient for standing, Plaintiffs must assert that the challenged activity – allocation of tax credits – affects their interest in observing ESA-listed species in a specific geographic area which they have visited and have specific plans to visit in the future. <u>Id.</u> at 565-567 (rejecting respondents' "ecosystem nexus," "animal nexus," and "vocational nexus" theories and stating that a plaintiff "must use the area affected by the challenged activity and not an area roughly in the vicinity of it.") (citation omitted).

The nine projects which were allocated tax credits in November 2006 are proposed to be located in various locations throughout the United States, including Edwardsport, Indiana; Polk County, Florida; Kemper County, Mississippi; Rutherford and Cleveland Counties, North Carolina; Bedford, Kentucky; Carson, California; and Longview Texas. FAC ¶ 45. Although Plaintiffs assert they use and enjoy areas in Rutherford and Cleveland Counties, North Carolina, where Duke Energy's Cliffside project is proposed to be located, <u>see id.</u> ¶¶ 10-14, 21-23, Plaintiffs do not assert they have any connection to the areas where the other projects are proposed. <u>See generally</u> FAC.

Not only do they have no geographic connection to the projects, Plaintiffs fail to assert any concrete interests that could even potentially be injured from the projects. <u>See generally</u> <u>id.</u>

As such, they cannot demonstrate any "particularized and personal" interest that has been or will be injured as a result of these eight projects, much less from the IRS' allocation of tax credit to those projects. See Florida Audubon Soc'y, 94 F.3d at 667-68 & n.4. Plaintiffs' general concerns about coal-fired power plants, FAC ¶¶ 53-56, are "too general for court action, and suited instead for political redress."[7]/ Id. at 667 n.4. Accordingly, at a minimum, this Court should find that Plaintiffs have failed to claim injury sufficient to challenge the allocation of tax credits to the eight projects located outside of North Carolina.[8]/

  2. **With respect to Duke Energy's Cliffside project, Plaintiffs have not alleged facts to show that the allocation of tax credits will substantially increase the risk of harm to their interest in listed species.**

 For the ninth project, Duke Energy's Cliffside project, although Plaintiffs do assert facts to show they view or attempt to view ESA-listed species in the Great Smoky Mountains National Park, FAC ¶¶ 11, 14, 22 and Declaration of Tracy Davids (Docket No. 19-4) ¶¶ 6, 7, 10, their

---

[7]/ The fact that Plaintiffs apparently seek to challenge any and all tax credit allocations authorized by the Energy Policy Act legislation regardless of where the proposed project will be located indicates that Plaintiffs' lawsuit is, at bottom, a challenge to Congress' legislation and not any particular agency action. Plaintiffs clearly disagree with Congress' determination that advanced coal and gasification projects that meet the criteria set forth in the Energy Policy Act legislation should receive tax credits. Plaintiffs, however, cannot bring a NEPA or ESA claim against an act of Congress. The APA provides for judicial review only of "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court . . . ." 5 U.S.C. § 704. Under the plain language of the APA, Congress is not an "agency." Id. at § 701(b)(1)(A) (defining "agency" to include "each authority of the Government of the United States, whether or not it is within or subject to review by another agency, but does not include-(A) the Congress . . .") (emphasis added).

[8]/ One of the projects – the Tampa Electric facility in Polk County, Florida – is no longer moving forward at all, and therefore cannot be a basis for standing. See Tampa Electric, Press Release dated October 4, 2007, at http://www.tampaelectric.com/news/article/index.cfm?article=430 (previously filed as Docket No. 6, Ex. 5) (last visited Aug. 18, 2008).

allegations of injury still fail because Plaintiffs have not demonstrated that the allocation of tax credits to the Cliffside project results in "*both* (i) a *substantially* increased risk of harm and (ii) a *substantial* probability of harm with that increase taken into account."[2]/ Public Citizen, Inc. v. National Highway Traffic Safety Admin., 489 F.3d 1279, 1295 (D.C. Cir. 2007) (citing Mountain States Legal Found. v. Glickman, 92 F.3d 1228, 1234-35 (D.C. Cir. 1996)) (emphasis in original).

Plaintiffs' allegations do not meet this test because, even accepting the statement of the National Park Service as true, FAC ¶ 67, this statement merely concludes that the project "could impact park resources, including threatened and endangered species."  Furthermore, Plaintiffs cannot demonstrate an increased risk of harm, much less a substantially increased risk, since the Cliffside project is not yet operational and will not necessarily result in an increase in air pollution over the status quo.  As Defendants have explained, the Cliffside project is not expected to be in service until 2012 and it is not certain that the proposed project will ever become operational.  Memorandum in Support of Defendants' Motion to Dismiss (Docket No. 18) ("Defs' MTD") at 19-20.  Even if the proposed project does become operational, it will not necessarily increase emissions over the status quo.  Id. at 20.  See also United Transportation Union v. ICC, 891 F.2d 908, 912 (D.C. Cir. 1989) (speculative allegations of future injury are not sufficient to establish injury in fact).

At bottom, Plaintiffs have failed to assert facts sufficient to show, as they must, that there is a substantially increased risk of injury to their particular interests.  As such, they cannot satisfy

---

[2]/    If the Court were to determine that Plaintiffs had demonstrated a sufficient geographic connection to the other eight projects, this argument would apply equally to those projects.

the injury-in-fact requirement.

**B.      Plaintiffs also cannot establish causation or redressibility.**

Even if this Court, <u>arguendo</u>, were to find that Plaintiffs could establish an injury-in-fact, their claim of standing still fails because they cannot establish the other two required elements of standing – causation and redressibility.  In this case, like in <u>Lujan</u>, Plaintiffs are challenging the legality of government action or inaction, yet their "asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else."  504 U.S. at 562.  As the <u>Lujan</u> Court explained, in such cases, the existence of causation and redressibility

> depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict, and it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury.  Thus, when the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily substantially more difficult to establish.

<u>Id.</u> (citations and quotations omitted).

**1.      Plaintiffs' alleged injury to their opportunities to view listed species cannot be fairly traced to the allocation of tax credits.**

In third-party standing cases, to establish causation Plaintiffs "must show that the agency's action [or inaction] is more than only one of the many factors whose relative influence may affect the third parties' behavior."  <u>Community for Creative Non-Violence v. Pierce</u>, 814 F.2d 663, 669 (D.C. Cir. 1987).  They must establish that "[t]he facts alleged . . . show that the agency action [or inaction] is at least a substantial factor motivating the third parties' actions . . . ."  <u>Id.</u>; <u>see also</u> <u>Dellums v. U.S. Nuclear Regulatory Comm'n</u>, 863 F.2d 968, 980 (D.C. Cir. 1988) ("when numerous third parties and independent variables lead to an injury, the

14

complainant has the burden of showing that but for the particular governmental action that he is challenging, the injury would abate.") (citing Allen v. Wright, 468 U.S. 737, 759 (1984) and Warth v. Seldin, 422 U.S. 490, 507 (1975)); Florida Audubon Soc'y, 94 F.3d at 669 ( "[U]nless there is a substantial probability that the substantive agency action . . . created a demonstrable risk, or caused a demonstrable increase in an existing risk, of injury to the particularized interests of the plaintiff, the plaintiff lacks standing." ) (internal citation omitted) (emphasis added).

Plaintiffs cannot show it is sufficiently probable that their alleged injury – harm to their opportunities to view ESA-listed species – is causally linked to the allocation of tax credits to third party power companies or that the allocation of tax credits is a substantial factor in the behavior of these third party power plant companies.  See Community for Creative Non-Violence, 814 F.2d at 669.  Plaintiffs cannot make the required showing because the links in the chain of causation will not support standing.  Florida Audubon Soc'y, 94 F.3d at 680 ("we are concerned here not with the length of the chain of causation, but with the plausibility of the links that comprise the chain." ) (citations and quotations omitted).

As best Defendants can ascertain, the following links comprise the chain of causation for Plaintiffs' ESA claim: (1) Defendants allocate tax credits to a particular project without consulting with FWS and/or NMFS; (2) a power plant company constructs the project because of the tax credits; (3) the plant emits air pollution over and above what existing plants emit; (4) those additional emissions have adverse effects on listed species and/or their habitat, reducing the numbers or range of these species; and (5) Plaintiffs have fewer opportunities to view such species.  Plaintiffs' chain of causation is insufficient to satisfy the constitutional requirements for standing.

15

Here, like in <u>Florida Audubon Soc'y</u>, the links that comprise the chain are individually and cumulatively weak.  The first link improperly presumes that Defendants would have to engage in formal consultation that results in the issuance of an incidental take statement, which may impose terms and conditions on the agency action.  <u>See</u> 16 U.S.C. §§ 1536(b)(3)(A), 1536(b)(4); 50 C.F.R. § 402.14.  Formal consultation is not the only possibility, however.  Defendants could also meet their ESA section 7 obligations by making a determination that their action would have "no effect" on listed species or by engaging in informal consultation, neither of which would result in any restrictions on issuance of tax credits.  <u>See</u> 16 U.S.C. § 1536(a)(2); 50 C.F.R. §§ 402.13, 402.14(a)-(b).  <u>See also</u> <u>Defenders of Wildlife v. Kempthorne</u>, Civ. No. 04-1230 (GK), 2006 WL 2844232, at *19 (D.D.C. Sept. 29, 2006); <u>American Littoral Soc. v. EPA</u>, 199 F. Supp. 2d 217, 244 fn. 16 (D.N.J. 2002).

The second link improperly presumes that the allocation of tax credits is a substantial factor motivating the power plant companies awarded tax credits in November 2006 to build advanced coal or gasification facilities.  However, there is an example of the exact opposite occurrence here.  Despite receiving an allocation of tax credits, one of the recipients, Tampa Electric, announced it will not proceed with its project.  <u>See</u> supra n.7.  There is also evidence that Duke Energy's plans to construct the Cliffside project predate, and thus were not caused by, the allocation of tax credit.  <u>See</u> Docket No. 6, Ex. 7 at 3 (stating that, in May 2005, Duke Energy filed with the North Carolina Utilities Commission information related to its plans to construct the Cliffside project).  Moreover, the fact that the one-time tax credit constitutes only a small percentage of the overall costs of constructing and operating an advanced coal technology unit suggests it is unlikely to be a <u>substantial</u> factor in a company's decision about whether or

16

not to proceed with the project.  See Docket Nos. 6, Ex. 6, and 9, Ex. 1 (showing that the

Cliffside project was awarded $125 million in tax credits, which is slightly less than 7% of the

projects estimated capital costs of $1800 million).  Finally, Congressional predictions that a tax

credit will promote a particular outcome cannot be relied on to demonstrate the causal chain

necessary for standing.  Florida Audubon Soc'y, 94 F.3d at 670-71.

The third, fourth, and fifth links improperly presume that a new plant will result in

additional air pollution above the status quo and that this additional air pollution with harm listed

species and/or their habitat.  See supra at 13.  Plaintiffs proffered support for this presumption,

the National Park Service's preliminary comments on a draft permit for the Cliffside project, is

questionable since the permit may have been modified after the comments were made and since

the National Park Service is not charged with implementation of either the ESA or any pollution

control statute.

The Supreme Court and D.C. Circuit have rejected standing claims in analogous

situations in cases involving challenges to the provision of tax credits or exemptions.  See Defs'

MTD at 10-11 (discussing Florida Audubon Soc'y and Allen v. Wright).  Courts have also

rejected attempts, like this one, to premise standing on mere conjecture regarding the link

between government action (or inaction) and future events.  See Lujan, 504 U.S. at 566

("[s]tanding is not 'an ingenious academic exercise in the conceivable'") (citation omitted);

United Transp. Union v. ICC, 891 F.2d 908, 912 (D.C. Cir. 1989) (court can reject as "overly

speculative those . . . [allegations] which are predictions of future events (especially future

actions to be taken by third parties) . . ."); see also Community for Creative Non-Violence, 814

F.2d at 668-669 (causal connection too attenuated in third party standing case).  Because

17

Plaintiffs' chain of causation in this case is similarly weak, this Court should do the same and dismiss the First Amended Complaint.

> **2.    A favorable decision is not substantially likely to redress Plaintiffs' asserted injury to their interest in observing listed species.**

Plaintiffs' standing also fails because they cannot show that the remedy sought is "substantially likely" to redress their alleged injury. <u>Community for Creative Non-Violence</u>, 814 F.2d at 670 (citing <u>Duke Power Co. v. Carolina Envtl. Study Group</u>, 438 U.S. 59, 75 n. 20 (1978)). Under the best possible scenario for Plaintiffs, the Court would hold that Defendants are required to comply with section 7(a)(2) of the ESA before allocating tax credits to advanced coal and gasification projects, order Defendants "to revoke or suspend the tax credits until they fully comply with the ESA," and "[e]njoin Defendants from approving the remainder of the tax credits under the Energy Policy Act of 2005 until Defendants comply with the ESA." <u>See</u> FAC Prayer for Relief ¶¶ 4, 6. There are two reasons that Plaintiffs cannot demonstrate redressibility, even under this scenario.

First, Plaintiffs have not alleged that Defendants have the ability to put conditions on the proposed clean coal and gasification projects as a result of consultation on the tax credit allocations, though they may argue that this is a contested issue and that the Court should presume their view of the merits will prevail when determining standing. <u>See generally</u> FAC; Plaintiffs' Notice of Supplemental Authority (Docket No. 24) at 3 (citing <u>Defenders of Wildlife v. Gutierrez</u>, 532 F.3d 913, 924-25 (D.C. Cir. 2008) ("<u>Defenders</u>"). However, the situation in <u>Defenders</u> is distinguishable from this one because, among other things, the plaintiffs in that case had made allegations that supported their view of the merits. <u>Defenders</u>, 532 F.3d at 925 (citing

to various provisions of the relevant statute and legislative history evidencing that Coast Guard could take environmental factors into account when designating traffic separation schemes).

Here, in contrast to Defenders, Plaintiffs have not cited to any provision of the Energy Policy Act of 2005 that gives Defendants discretion to take any conditions resulting from a consultation into account in allocating tax credits to qualifying projects, or the Duke Energy Cliffside project in particular.  See Defs' MTD at 13-14.  Moreover, while it is correct that on a motion to dismiss the Court must accept as true all well-pleaded facts, Macharia v. United States, 334 F.3d 61, 64, 67 (D.C. Cir. 2003), the court "need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations."  Holmes-Martin v. Leavitt, --- F. Supp. 2d ---, Civ. No. 07-2128 (RMU), 2008 WL 3090273, at *4 (D.D.C. 2008) (citing Warren v. District of Columbia, 353 F.3d 36, 40 (D.C. Cir. 2004) and Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002)).  See also Papasan v. Allain, 478 U.S. 265, 286 (1986) (court is not bound to accept as true legal conclusions couched as factual allegations) (citing Briscoe v. LaHue, 663 F.2d 713, 723 (7th Cir. 1981) ("conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss")

Second, Plaintiffs have not and cannot meet their burden of demonstrating the relief they request is substantially likely to redress their alleged injury because it is entirely uncertain whether revocation or suspension of the tax credits would have an affect on the third party power plant companies decisions to move forward with their projects.  As the D.C. Circuit has explained, "satisfying this aspect of the standing inquiry entails more than simply alleging facts that indicate that the withdrawal . . . of the [tax credit allocation] will make a difference because it will remove one influence possibly motivating third parties' injurious actions."  Community

19

for Creative Non-Violence, 814 F.2d at 669 (quotation omitted).

Here, even if Defendants were required to suspend or revoke the tax credits, whether the third party power plant companies' behavior would be altered is entirely speculative and thus Plaintiffs' asserted underlying injuries – harm to their opportunities to view ESA-listed species due to pollution from proposed power plants – may not be redressed.  See infra at 16; California Forestry Ass'n v. Thomas, 936 F. Supp. 13, 18 (D.D.C. 1996) (finding plaintiffs had not demonstrated redressability where "it [wa]s entirely speculative whether the injunction Plaintiffs seek would either prevent or remedy their alleged injuries"); Community for Creative Non-Violence, 814 F.2d at 669-70.

Plaintiffs lack standing for the additional reason that they have failed to demonstrate the relief they seek is likely to redress their alleged injury.

## Conclusion

For all the foregoing reasons, as well as the reasons set forth in Defendants' briefs in support of its initial Motion to Dismiss (Docket Nos. 18, 20, 25), Defendants respectfully request that this Court grant Defendants' motion to dismiss and dismiss Plaintiffs' First Amended Complaint in its entirety.

Dated: August 27, 2008                    Respectfully submitted,

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Division

RACHEL A. DOUGAN, DC Bar # 485507
JASON BRUNO, DC Bar # 472290
Environment and Natural Resources Division
United States Department of Justice
Benjamin Franklin Station, P.O. Box 663

20

Washington, D.C.  20044-0663
Telephone: (202) 616-5082 (Dougan)
Facsimile: (202) 305-0506
Rachel.Dougan@usdoj.gov


_____/s/ Meredith L. Flax_____
MEREDITH L. FLAX, Trial Attorney
D.C. Bar # 468016
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station, P.O. Box 7369
Washington, D.C. 20044-7369
Telephone: (202) 305-0404
Facsimile: (202) 305-0275
meredith.flax@usdoj.gov


Of Counsel:

CHARLES B. RAMSEY
Office of Associate Chief Counsel
Internal Revenue Service
U.S. Department of Treasury
Washington, D.C.
(202) 622-3110

JANET MASTERS
Office of General Counsel
U.S. Department of Energy
Washington, D.C.
(202) 586-3415

NATALIE APPETTA
Office of Chief Counsel
National Energy Technology Laboratory
U.S. Department of Energy
Morgantown, WV
(304) 285-2035

21

## CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2008, a copy of the foregoing DEFENDANTS'

MOTION TO DISMISS AND MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION

TO DISMISS, was served by CM/ECF electronic filing on the following attorneys of record:

Scott A. Gollwitzer
APPALACHIAN VOICES
16 Eagle Street, Suite 200
Asheville, NC 28801
(828) 505-1963
scott@appvoices.org

Stephen Holmes Novak
WILDLAW
46 Haywood Street
Suite 323
Asheville, NC 28801
(828) 252-9223
wildlawNC@aol.com

In addition, pursuant to this Court's Standing Order For Civil Cases, a courtesy copy will

be served on the Court via courier on August 27, 2008.

/s/ Meredith L. Flax
Counsel for Defendants

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| APPALACHIAN VOICES and<br>THE CANARY COALITION, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SAMUEL W. BODMAN, in his official capacity | ) | |
| as Secretary of the United States Department of | ) | No. 1:08-cv-00380-RMU |
| Energy; HENRY M. PAULSON, JR., in his | ) | |
| official capacity as Secretary of the United States | ) | |
| Department of the Treasury; VICTOR K. DER, | ) | |
| in his official capacity as Deputy Secretary for | ) | |
| Clean Coal; and JOSEPH GLOVE, III, in his | ) | |
| official capacity as Program Analyst for the | ) | |
| Office of Clean Energy Systems, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**[PROPOSED] ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

This matter is presently before the Court upon Defendants' Motion to Dismiss Plaintiffs'

First Amended Complaint.  Upon reading the memoranda in support of and in opposition to the

motion, the Court holds that this Court does not have subject matter jurisdiction over this case.

Plaintiffs lack Article III standing to bring their National Environmental Policy Act and

Endangered Species Act claims.  In addition, Plaintiffs have not challenged a final agency action

with respect to the Department of Energy.  Defendants' motion is hereby GRANTED.  The

clerk is directed to enter judgment dismissing Plaintiffs' complaint in its entirety, with each party

to bear its own costs.  It is so ORDERED.

DATED this ____ day of _____, 2008.

_____
**Ricardo M. Urbina**
United States District Court Judge

Names of those entitled to notice (per Local Civil Rule 7(k)):

Rachel A. Dougan
U.S. Department of Justice
Environment and Natural Resources Division
Natural Resources Section
Benjamin Franklin Station, P.O. Box 663
Washington, D.C.  20044-0663
(202) 616-5082
Rachel.Dougan@usdoj.gov

Meredith L. Flax
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station, P.O. Box 7369
Washington, D.C. 20044-7369
(202) 305-0404
meredith.flax@usdoj.gov

Scott A. Gollwitzer
APPALACHIAN VOICES
16 Eagle Street, Suite 200
Asheville, NC 28801
(828) 505-1963
scott@appvoices.org

Stephen Holmes Novak
WILDLAW
46 Haywood Street
Suite 323
Asheville, NC 28801
(828) 252-9223
wildlawNC@aol.com