### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

APPALACHIAN VOICES, *et al.*,      :
                                     :

            Plaintiffs,      :     Civil Action No.:    08-0380 (RMU)
                                       :

            v.               :     Re Document Nos.:  35, 39
                                       :

STEVEN CHU,                       :
in his official capacity as Secretary of the   :
Department of Energy, *et al.*,[1]       :
                                       :
           Defendants.     :

### MEMORANDUM OPINION

#### Granting the Plaintiffs' Motion to File a Second Amended Complaint; Denying as Moot the Plaintiffs' Motion for Relief Upon Reconsideration

## I. INTRODUCTION

This matter comes before the court on the plaintiffs' motion for relief upon reconsideration and their motion to file a second amended complaint. The plaintiffs, nonprofit organizations devoted to the environmental preservation of the Appalachian Mountains region, brought suit against the defendants, the Department of Treasury ("DOT") and the Department of Energy ("DOE"), alleging that the defendants erroneously failed to consider the environmental consequences of a program that provides tax credits to companies that use "clean coal" technology. The plaintiffs filed their first amended complaint on August 12, 2008.

On November 10, 2008, the court dismissed the first amended complaint for lack of standing. The plaintiffs now move for relief upon reconsideration of that order. In the alternative, the plaintiffs seek leave to file a second amended complaint to remedy the

---

[1]    The court has substituted Secretary of Energy Steven Chu for the original named defendant, former Secretary of Energy Samuel Bodman, pursuant to Federal Rule of Civil Procedure 25(d).

deficiencies that prompted the dismissal of the first amended complaint.  The defendants oppose both motions.  Because the plaintiffs' proposed second amended complaint remedies the deficiencies in the first amended complaint, the court determines that granting the plaintiffs leave to file a second amended complaint is in the interest of justice.  As a result, the court denies as moot the plaintiffs' motion for relief upon reconsideration of the order dismissing the first amended complaint.

## II.  BACKGROUND

### A.  Factual History

The Energy Policy Act of 2005 provides for the allocation of up to $1.65 billion in tax credits for investment in "clean coal" facilities.  Pub. L. No. 109-58 at § 1307, 119 Stat. 594 at 999-1006 (2005); *see also* 26 U.S.C. §§ 48A(d)(1), 48B(d)(1).  The Internal Revenue Service ("IRS") will allocate the tax credits only if DOE, after reviewing project applications, "provides a certification of feasibility and consistency with energy policy goals ('DOE certification') for the project."  IRS Not. 2006-24 at 4.01 (Mar. 13, 2006).  Recipients of tax credits under 26 U.S.C. §§ 48A and 48B have five years and seven years, respectively, to place their project into service. 26 U.S.C. § 48A(d)(2)(E); IRS Not. 2006-25 at § 4.02(10) (Mar. 13, 2006).  If a recipient fails to meet the conditions required to place its project into service within that time period – for example, if it fails to receive all required federal and state environmental approvals – it forfeits the tax credit.  IRS Not. 2006-24 at App. A; IRS Not. 2006-25 at App. A.

In the 2006 round of tax credits, IRS allocated $1 billion in credits to nine clean coal projects: the Duke Energy Cliffside Modernization Project ("the Cliffside project"), located in

North Carolina, and eight other projects in various locations around the country.  1st Am. Compl. ¶¶ 42-45.  On January 29, 2008, Duke Energy obtained a construction permit to begin building the new Cliffside plant.  *Id.* ¶ 69.

### B.  Procedural History

On March 3, 2008, the plaintiffs filed their complaint and moved for a preliminary injunction, claiming that the defendants had violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq.*, by failing to conduct an Environmental Impact Study ("EIS") evaluating the environmental impacts of the tax credit program.  *See generally* Compl.; Pls.' Mot. for Prelim. Inj.  The plaintiffs then filed an amended complaint adding a claim under the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531 *et seq.*, alleging that the defendants erroneously failed to consult with the U.S. Fish and Wildlife Service and the U.S. National Marine Fisheries Service before allocating the tax credits.  1st Am. Compl. ¶ 2.  The defendants opposed the preliminary injunction motion and moved to dismiss the first amended complaint, maintaining that the plaintiffs lacked standing to bring suit.  Defs.' Opp'n to Pls.' Mot. for Prelim. Inj. at 11-21; Defs.' Mot. to Dismiss 1st Am. Compl. at 8-20.

On November 10, 2008, the court granted the defendants' motion to dismiss.  *See generally* Mem. Op. (Nov. 10, 2008).  It held first that the plaintiffs had failed to adequately allege injury-in-fact with respect to the eight projects other than Cliffside because they had asserted no particularized connection to or interest in those sites.  *Id.* at 6-9.  The court also concluded that the plaintiffs had failed to assert a fairly traceable causal connection between the tax credits and the decision to go forward with the Cliffside project.  *Id.* at 9-14.  The plaintiffs

now move for relief upon reconsideration of the court's November 10, 2008 order.  *See generally* Pls.' Mot. for Relief Upon Recons.  In the alternative, the plaintiffs seek leave to file an amended complaint, which they maintain satisfies the traceability requirement at this stage of the proceedings.  *See generally* Pls.' Mot. to Amend.  The defendants oppose both motions.  *See generally* Defs.' Opp'n to Pls.' Mot. for Relief Upon Recons.; Defs.' Opp'n to Pls.' Mot. to Amend.

## III.  ANALYSIS

### A.  Legal Standard for a Motion for Leave to Amend the Complaint

Under Federal Rule of Civil Procedure 15(a), a party may amend its pleading once as a matter of course at any time before a responsive pleading is served.  FED. R. CIV. P. 15(a). Additionally, Rule 15(a) allows a party to amend its pleading to add a new party.  *Id*.; *Wiggins v. Dist. Cablevision, Inc*., 853 F. Supp. 484, 499 (D.D.C. 1994); 6 FED. PRAC. & PROC. 2d § 1474. According to decisions of this circuit, Rule 15(a) "guarantee[s] a plaintiff an absolute right" to amend the complaint once at any time so long as the defendant has not served a responsive pleading and the court has not decided a motion to dismiss.  *James v. Hurson Assocs., Inc. v. Glickman*, 229 F.3d 277, 282-83 (D.C. Cir. 2000) (citing FED. R. CIV. P. 15(a)).  If there is more than one defendant, and not all have served responsive pleadings, the plaintiff may amend the complaint as a matter of course with regard to those defendants that have yet to answer.  6 FED. PRAC. & PROC. 2d § 1481.  Motions to dismiss and for summary judgment do not qualify as responsive pleadings for the purposes of Rule 15.  *James*, 229 F.3d at 283; *Bowden v. United*

*States*, 176 F.3d 552, 555 (D.C. Cir. 1999); *U.S. Info. Agency v. Krc*, 905 F.2d 389, 399 (D.C. Cir. 1990).

Once a responsive pleading is served, however, a plaintiff may amend the complaint only by leave of the court or by written consent of the adverse party. FED. R. CIV. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962). The grant or denial of leave lies in the sound discretion of the district court. *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). The court must, however, heed Rule 15's mandate that leave is to be "freely given when justice so requires." *Id.*; *Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1083 (D.C. Cir. 1998). Indeed, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman*, 371 U.S. at 182. Denial of leave to amend therefore constitutes an abuse of discretion unless the court gives sufficient reason, such as futility of amendment, undue delay, bad faith, dilatory motive, undue prejudice or repeated failure to cure deficiencies by previous amendments. *Id.*; *Caribbean Broad. Sys.*, 148 F.3d at 1083.

Denial of leave to amend based on futility is warranted if the proposed claim would not survive a motion to dismiss. *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996). An amended complaint is futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory or could not withstand a motion to dismiss. *Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101, 114 (D.D.C. 2002) (quoting 3 FED. PRAC. 3d § 15.15[3]); *Willoughby v. Potomac Elec. Power Co.*, 100 F.3d 999, 1003 (D.C. Cir. 1996) (affirming the district court's denial of leave to amend given the "little chance" that plaintiff would succeed on his claim).

5

As for undue delay, the text of Rule 15 does not prescribe a time limit on motions for leave to amend.  FED. R. CIV. P. 15(a); *Caribbean Broad. Sys.*, 148 F.3d at 1084.  Accordingly, a court should not deny leave to amend based solely on time elapsed between the filing of the complaint and the request for leave to amend.  *Atchinson v. District of Columbia*, 73 F.3d 418, 426 (D.C. Cir. 1996) (citing *Hayes v. New England Millwork Distribs., Inc.*, 602 F.2d 15, 19 (1st Cir. 1979)).  Nor does the prolonged nature of a case affect whether the plaintiff may amend its complaint.  *Caribbean Broad. Sys.*, 148 F.3d at 1084 (concluding that the length of litigation is relevant only insofar as it suggests bad faith or prejudice).  Rather, the court should take into account the actions of other parties and the possibility of resulting prejudice.  *Atchinson*, 73 F.3d at 426; *Caribbean Broad. Sys.*, 148 F.3d at 1084.

**B.  The Court Grants the Plaintiffs' Motion to File a Second Amended Complaint**

The plaintiffs seek to amend their complaint to "cur[e] the defect identified by the Court in granting Defendants' motion to dismiss."  Pls.' Reply in Support of Mot. to Amend at 2; *see also* Pls.' Mot. to Amend.  More specifically, the proposed second amended complaint would supplement the allegations in the first amended complaint in two ways.  First, it would incorporate a list of all species covered by the ESA "that inhabit the states potentially affected by the construction, operation and maintenance of Duke Energy's North Carolina facility and those states within regions that produce vast quantities of coal."  Proposed 2d Am. Compl. ¶ 61.  Second, it would include an allegation that "representing roughly seven (7) percent of construction costs, the tax credits were at least a substantial factor motivating Duke Energy to construct its North Carolina project . . . and/or to install and operate those types of advanced coal technologies identified in the Energy Policy Act of 2005."  *Id.* ¶ 47.

The defendants oppose the motion, stating that permitting the plaintiffs to amend their complaint "would reward undue delay and unduly prejudice" the defendants by stalling resolution of this matter. Defs.' Opp'n to Pls.' Mot. to Amend at 3-4. In addition, the defendants maintain that the court should deny the motion because amending the complaint would be futile because it would not cure the jurisdictional defects that caused the court to dismiss the first amended complaint. *Id.* at 4-6. The court will address each argument raised in the defendants' opposition in turn.

As an initial matter, the court will not deny a motion to amend based on untimeliness unless it concludes that the defendants have been prejudiced by the delay or that the plaintiffs have deliberately protracted the disposition of the case. *See Atchinson*, 73 F.3d at 426; *Caribbean Broad. Sys.*, 148 F.3d at 1084. The defendants have provided no indication that either of these justifications is present here. *See* Defs.' Opp'n to Pls.' Mot. to Amend at 3-4. They fail to identify any specific way in which they would be prejudiced if the plaintiffs were allowed to amend their complaint, advancing only a general complaint that the plaintiffs should not be allowed to create further delay in this case. *Id.* Nor have the defendants provided any information from which the court could infer that the plaintiffs exercised bad faith to prolong these proceedings. *Id.* To the contrary, the plaintiffs first requested leave to file a second amended complaint shortly after the court issued its memorandum opinion identifying the factual deficiencies in the first amended complaint, which suggests that they lack any intent to cause

unfair delay.[2]  Thus, there is no justification for denying the plaintiffs' motion solely because of

the time that has elapsed since the plaintiffs filed their original complaint.

The more challenging question facing the court is whether the plaintiffs' motion to amend

their complaint should be denied based on futility.  The defendants maintain that it should,

contending that "the changes Plaintiffs propose making to their complaint would not cure the

jurisdictional defects identified by the Court in granting Defendants' motion to dismiss."  Defs.'

Opp'n to Pls.' Mot. to Amend at 4.  More specifically, the defendants assert that the list of

endangered species that inhabit the states potentially affected by the Cliffside project is not

relevant to the plaintiffs' claims.  *Id.* at 4-5.  Furthermore, the defendants argue that the

plaintiffs' complaint would not satisfy the traceability prong of the standing analysis even if the

complaint included the additional allegation regarding the effect of the tax credit on the decision

to build the Cliffside plant.  *Id.* at 5-6.

It is not clear how the first proposed addition to the complaint – the list of endangered

species that inhabit the states potentially affected by the Cliffside project – is relevant to the

plaintiffs' claims.  The plaintiffs fail to address this issue in their reply, focusing only on the

second proposed addition to their complaint.  *See* Pls.' Reply in Support of Mot. to Amend at 2-

---

[2]    The defendants also urge the court to deny the plaintiffs' request to amend their complaint because it was raised for the first time in their reply in support of their motion for relief upon reconsideration.  Defs.' Opp'n to Pls.' Mot. to Amend at 3 & n.1.  This argument, however, is based on a misstatement of the facts: although the plaintiffs did not file their formal motion to amend until January 12, 2009 – the same day they filed their reply in support of their motion for relief upon reconsideration – they raised their request to amend the complaint for the first time in their motion for relief upon reconsideration.  *See* Pls.' Mot. for Relief Upon Recons. at 11 (stating that "[i]f this Court finds that Plaintiffs have insufficiently pled their claims, Plaintiffs request leave to amend their complaint pursuant to Fed. R. Civ. Proc. 15(a)(2)").  Therefore, the court will not deny the plaintiffs' motion to amend their complaint on this basis.

3. Therefore, the court cannot conclude that the complaint could withstand dismissal as a result of the first proposed addition to the complaint.

The key inquiry, then, is whether the second proposed addition would allow the complaint to withstand a motion to dismiss. In addressing this question, the court is cognizant of the fact that the plaintiffs' burden is lower now than it will be at the summary judgment stage. To satisfy the standing analysis at this stage, the plaintiffs need only offer general factual allegations of injury resulting from the defendant's conduct, and the court must presume that those allegations embrace the specific facts necessary to support the claim. *Sierra Club v. Envtl. Prot. Agency*, 292 F.3d 895, 898-99 (D.C. Cir. 2002); *see also Cmty. Nutrition Inst. v. Block*, 698 F.2d 1239, 1247-48 (D.C. Cir. 1983), *rev'd on other grounds*, 467 U.S. 340 (1984) (stating that at the motion to dismiss stage, the plaintiffs were not required to prove causation, but were "only required to *assert* a *fairly* traceable causal connection between the challenged action and the alleged injury"). Based on this standard, the court concludes that the plaintiffs have surmounted the hurdle – albeit by only a slight margin – necessary to allow them to amend their complaint. In other words, the additional allegation concerning the nexus between the allocation of the tax credits and the decision to pursue the Cliffside project cures the defect that caused the court to dismiss the first amended complaint for failure to allege traceability. *Compare Fl. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 670 (D.C. Cir. 1996) (concluding, at the summary judgment stage, that "the presence and number of third-party links in this causal chain independently corroborate that appellants' claim of causation is 'entirely speculative' and insufficient for standing") *with Fed. for Am. Immigration Reform, Inc. v. Reno*, 93 F.3d 897, 908 n.9 (D.C. Cir. 1996) (noting that the causal relationship that the plaintiff alleged was more direct than the attenuated causal

chain in *Florida Audubon*, observing that there was evidence indicating that the plaintiffs' injury was fairly traceable to the defendants' actions and adding that "the instant case remains at the pleading stage"). In sum, because the court cannot conclude that the plaintiffs' proposed second amended complaint would not survive a motion to dismiss, the plaintiffs are entitled to amend their complaint.[3]


### IV.  CONCLUSION

For the foregoing reasons, the court grants the plaintiffs' motion to file a second amended complaint.[4]  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 23rd day of September, 2009.


                                        RICARDO M. URBINA
                                        United States District Judge

---

[3]     Following the production of the administrative record, the plaintiffs will be required to point to concrete evidence to substantiate their assertion that the allocation of the tax credits was at least a substantial factor motivating Duke Energy's decision to proceed with the Cliffside project. *See Fl. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 672 (D.C. Cir. 1996) (noting that "[a]s we review a grant of summary judgment here, we need not accept appellants' alleged chain of events if they are unable to demonstrate competent evidence to support each link").

[4]     This holding renders moot the plaintiffs' motion for relief upon reconsideration of the order dismissing the first amended complaint. *See, e.g., P & V Enters. v. U.S. Army Corps of Eng'rs*, 466 F. Supp. 2d 134, 135 n.1 (D.D.C. 2006).