# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| APPALACHIAN VOICES, *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 08-0380 (RMU) |
| | : | | |
| v. | : | Re Document No.: | 48 |
| | : | | |
| STEVEN CHU, | : | | |
| in his official capacity as Secretary of the | : | | |
| Department of Energy, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### DENYING THE PLAINTIFFS' RENEWED MOTION FOR A PRELIMINARY INJUNCTION

## I. INTRODUCTION

This matter comes before the court on the plaintiffs' renewed motion for a preliminary injunction. In early 2008, the plaintiffs, nonprofit organizations devoted to the environmental preservation of the Appalachian Mountains region, brought suit against the defendants, the Department of Treasury and the Department of Energy, alleging that the defendants erroneously failed to consider the environmental consequences of a program that provides tax credits to companies that use "clean coal" technology. The plaintiffs have now moved for a preliminary injunction to "immediately suspend allocation of the . . . tax credit" at issue in this case. Because the plaintiffs have failed to meet the threshold for preliminary injunctive relief, however, the court denies the plaintiffs' motion.

## II. FACTUAL & PROCEDURAL BACKGROUND[1]

Through the Energy Policy Act of 2005 ("the EPAct"), Congress provided for the allocation of up to $1.65 billion in tax credits for investment in "clean coal" facilities. Pub. L. No. 109-58 at § 1307, 119 Stat. 594 at 999-1006 (2005); *see also* 26 U.S.C. §§ 48A(d)(1), 48B(d)(1). Each recipient of a tax credit under the EPAct is required to satisfy certain prerequisites before placing its project into service; for example, the recipient must "receive[] all Federal and State environmental authorizations or reviews necessary to commence construction of the project." 26 U.S.C. § 48A(e)(2)(A). In 2006, the Internal Revenue Service allocated $1 billion in tax credits to the Duke Energy Cliffside Modernization Project ("the Cliffside project"), located in North Carolina, and eight other projects. 2d Am. Compl. ¶¶ 42-46. Construction on the Cliffside project began in January 2008, *see* Pls.' Mot. at 1, and the modernized Cliffside plant is scheduled to become operational in the summer of 2012, *see* Defs.' Opp'n at 1.

The plaintiffs claim that the defendants violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq.*, the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq.*, and the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531 *et seq.*, by failing to evaluate the environmental impacts of the tax credit program and by failing to consult with the U.S. Fish and Wildlife Service and the U.S. National Marine Fisheries Service before allocating the tax credits. *See generally* 2d Am. Compl. The plaintiffs commenced this action and moved

---

[1] A detailed recitation of the factual and procedural history of this case, which has been summarized in the court's two prior memorandum opinions, is not necessary to resolve the instant motion. *See* Mem. Op. (Sept. 23, 2009) at 2-4; Mem. Op. (Nov. 10, 2008) at 2-4. Accordingly, the court will provide only a brief overview here.

for a preliminary injunction in March 2008, *see generally* Compl.; Pls.' 1st Mot. for Preliminary Inj., and filed a first amended complaint in August 2008, *see generally* 1st Am. Compl. The court dismissed the first amended complaint in November 2008, holding that the plaintiffs had failed to adequately allege injury in fact with respect to the eight projects other than Cliffside because they had asserted no particularized connection to or interest in those sites, *see* Mem. Op. (Nov. 10, 2008) at 6-9, and that the plaintiffs had failed to assert a fairly traceable causal connection between the allocation of the tax credits and the decision to proceed with the Cliffside project, *see id.* at 9-14. As a consequence, the court denied as moot the plaintiffs' motion for a preliminary injunction. *See id.* at 14.

In January 2009, the plaintiffs moved for leave to file a second amended complaint to remedy the deficiencies that had prompted the dismissal of the first amended complaint. *See generally* Pls.' Mot. to Amend Compl. The court granted that motion in September 2009, *see generally* Mem. Op. (Sept. 23, 2009), and the plaintiffs filed a second amended complaint the same day, *see generally* 2d Am. Compl. The following month, the plaintiffs filed a renewed motion for a preliminary injunction. *See generally* Pls.' Renewed Mot. for Preliminary Inj. ("Pls.' Mot."). As the plaintiffs' renewed motion for a preliminary injunction is now ripe for adjudication, the court turns to the applicable legal standard and the parties' arguments.

### III. ANALYSIS

#### A. Legal Standard for Injunctive Relief

This court may issue interim injunctive relief only when the movant demonstrates "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the

absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008) (citing *Munaf v. Geren*, 128 S. Ct. 2207, 2218-19 (2008)). It is particularly important for the movant to demonstrate a likelihood of success on the merits. *Cf. Benten v. Kessler*, 505 U.S. 1084, 1085 (1992) (per curiam). Indeed, absent a "substantial indication" of likely success on the merits, "there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review." *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 38 F. Supp. 2d 114, 140 (D.D.C. 1999) (internal quotation omitted).

The other critical factor in the injunctive relief analysis is irreparable injury. A movant must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 129 S. Ct. at 375 (citing *Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983)). Indeed, if a party fails to make a sufficient showing of irreparable injury, the court may deny the motion for injunctive relief without considering the other factors. *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995). Provided the plaintiff demonstrates a likelihood of success on the merits and of irreparable injury, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987). Finally, "courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).

As an extraordinary remedy, courts should grant such relief sparingly. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). The Supreme Court has observed "that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the

movant, *by a clear showing*, carries the burden of persuasion." *Id.* Therefore, although the trial court has the discretion to issue or deny a preliminary injunction, it is not a form of relief granted lightly. In addition, any injunction that the court issues must be carefully circumscribed and "tailored to remedy the harm shown." *Nat'l Treasury Employees Union v. Yeutter*, 918 F.2d 968, 977 (D.C. Cir. 1990).

### B. The Court Denies the Plaintiffs' Renewed Motion for a Preliminary Injunction

The plaintiffs ask the court to "immediately suspend allocation of the . . . tax credit" to Duke Energy, contending that the four relevant factors weigh in favor of granting them interim injunctive relief. *See generally* Pls.' Mot. The defendants argue that the plaintiffs have failed to show irreparable harm, *see* Defs.' Opp'n at 16-20, that the plaintiffs are not likely to succeed on the merits of their claims because they lack standing and because their NEPA and ESA claims will fail on the merits, *see id.* at 20-42, and that the balance of the hardships and the public interest weigh against granting a preliminary injunction, *see id.* at 42-43. The plaintiffs devote the majority of their reply to reiterating their assertion that they are likely to succeed on the merits of their claims. *See* Pls.' Reply at 2-25. In addition, the plaintiffs repeat their claim that the balance of equities tips in their favor. *See id.* at 25. The plaintiffs fail to address the public interest prong in their reply. *See generally id.* Puzzlingly, the plaintiffs also fail in their reply to explicitly address irreparable injury as a separate prong of the injunctive relief analysis, *see generally id.*, addressing their claim of injury only to elaborate on their contention that they "are likely to succeed on the merits because [their] members possess Article III standing,"[2] *id.* at 2;

---

[2] The plaintiffs' assertion that they "are likely to succeed on the merits because [their] members possess Article III standing" is itself problematic, of course, given that standing is a necessary but not sufficient condition of success on the merits.

5

*see also id.* at 2-9 (discussing the injury-in-fact prong of the Article III standing analysis).

For the reasons discussed below, the court need only address the irreparable injury prong of the injunctive relief standard to rule on the plaintiffs' motion. As the plaintiffs themselves point out, an injunction suspending the allocation of the tax credit "will not prevent Duke [E]nergy from moving forward with [the Cliffside] project." Pls.' Mot. at 25. Indeed, the plaintiffs do not assert that the allocation of the tax credit will directly cause them irreparable harm, *see generally* Pls.' Mot.; rather, they predict that they will be harmed when the Cliffside plant becomes operational, which they concede is not expected to occur until the summer of 2012, *see* Pls.' Reply at 3. Because the plaintiffs' asserted injury is not imminent, and because the court will be able to render a decision on the merits of the plaintiffs' claims before the anticipated injury becomes imminent, the plaintiffs are not entitled to injunctive relief. *Wis. Gas Co. v. Fed. Energy Regulatory Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985) (holding that "the party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm") (internal quotation marks and alterations omitted); *see also* 11A FED. PRAC. & PROC. § 2948.1 (stating that "[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered[,] . . . . [for] if a trial on the merits can be conducted before the injury would occur there is no need for interlocutory relief"); *cf. Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1260 (10th Cir. 2003) (observing, in reference to the plaintiffs' claim that the construction of a golf course would harm a bald eagle habitat in the area, that "[i]f the plaintiffs [had] alleged that the eagles would be harmed only by the use of the completed

project, and not by its construction, this would be insufficient to justify a preliminary injunction in advance of the trial court's decision on the merits").

The plaintiffs rely heavily on *Fund for Animals v. Clark*, 27 F. Supp. 2d 8 (D.D.C. 1998), *Fund for Animals v. Norton*, 281 F. Supp. 2d 209 (D.D.C. 2003) and *Brady Campaign to End Gun Violence v. Salazar*, 612 F. Supp. 2d 1 (D.D.C. 2009) to support their proposition that "[w]orrying about the fate of a single member of any species – endangered or not – is a sufficient basis for granting a preliminary injunction where there is a likely violation of NEPA." Pls.' Reply at 8 (internal quotation marks omitted). But in these cases and others in which the court granted injunctive relief, the plaintiffs demonstrated not only that they had been injured by the defendants' procedural violations of NEPA, but also that they faced imminent or ongoing irreparable injury stemming from the defendants' hampering of their aesthetic and environmental interests. In *Brady Campaign to End Gun Violence*, for example, the plaintiffs challenged a final rule that had gone into effect approximately two months before the court's order. 612 F. Supp. 2d at 24-25. Because the rule authorized the possession of firearms in national parks and wildlife refuges in accordance with state law, the plaintiffs successfully argued that the rule caused them ongoing, irreparable environmental and aesthetic injuries in addition to their procedural injuries. *Id.* Similarly, in *Clark*, the court held that the plaintiffs, challenging an organized bison hunt planned by the Park Service, the Fish and Wildlife Service and the National Forest Service, had demonstrated that they would incur both procedural injuries and "other, concrete injuries" to their aesthetic interests if the defendants proceeded with the hunt. 27 F. Supp. 2d 8, 14 (D.D.C. 1998). And in *Norton*, the court addressed the plaintiffs' challenge to a permit authorizing the killing of mute swans that the Fish and Wildlife Service had issued

7

approximately one month before the court's order. 281 F. Supp. 2d at 219-20. The court concluded that the plaintiffs had demonstrated irreparable injury by asserting both procedural harm and harm to their environmental and aesthetic interests, namely, "their ability to view, interact with, study, and appreciate mute swans." *Id.*

In this case, in contrast, the plaintiffs predict that the operation of the Cliffside plant will cause them environmental and aesthetic injury by harming the ecosystem in the vicinity of the plant. *See, e.g.*, Pls.' Mot. at 23 (stating that "[a]dverse health effects caused by air pollution belched from the proposed Cliffside facility will impair the [plaintiffs'] use and enjoyment of their home, property, German Shepard kennel and their very bodies"); *id.* (stating that the plaintiffs "worr[y] about the harm added pollution from the Cliffside power plant will cause to the flora and fauna" in the area). But because the operation of the new Cliffside plant is not scheduled to begin for at least two years, *see* Defs.' Opp'n at 10, the plaintiffs have failed to demonstrate ongoing or imminent irreparable injury to their aesthetic interests, *see Wis. Gas Co.*, 758 F.2d at 674. And the plaintiffs' allegations of harm based on the defendants' alleged procedural violations alone are insufficient to demonstrate irreparable injury. *See Brady Campaign v. Prevent Gun Violence*, 612 F. Supp. 2d at 24 (noting that "a procedural violation of NEPA is not itself sufficient to establish irreparable injury").

In sum, the plaintiffs have failed to establish that the defendants' actions threaten to cause them imminent, irreparable injury. As a result, the court concludes that the plaintiffs are not entitled to preliminary injunctive relief. Consequently, the court need not address the three remaining factors of the injunctive relief analysis; for even if the plaintiffs were to make a strong showing on those factors, they still would not be entitled to interim injunctive relief. *See Winter*,

8

129 S. Ct. at 375 (holding that to be granted injunctive relief, a movant must "demonstrate that irreparable injury is *likely* in the absence of an injunction"); *CityFed Fin. Corp.*, 58 F.3d at 747 (authorizing the court to deny a motion for a preliminary injunction based solely on the moving party's failure to make a sufficient showing as to the likelihood of irreparable injury).

### IV. CONCLUSION

For the foregoing reasons, the court denies the plaintiffs' renewed motion for a preliminary injunction. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 26th day of July, 2010.

RICARDO M. URBINA
United States District Judge